**Rosemary CASTELLI, Plaintiff,**

**v.**

**Ronald E. STEELE, M.D., Methodist Hospital of Indiana, Inc. Institute for Kidney Stone Disease, Doctors Nourse, Mertz, Newman, Mosbaugh, and Steele, Inc., Defendants.**

**No. IP88–777C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 30, 1988.

John J. Sullivan, Indianapolis, Ind., Thomas Rund, Rockford, Ill., for plaintiff.

Douglas J. Hill, Hill Fulwider McDowell Funk & Matthews, Indianapolis, Ind., for defendant Methodist Hosp. of Indiana, Inc.

N. Kent Smith, Robert J. Shula, Bingham Summers Welsh & Spilman, Indianapolis, Ind., for defendants Ronald E. Steele, M.D., and Drs. Nourse, Mertz, Newman, Mosbaugh & Steele, Inc.

## ORDER ON DEFENDANTS' MOTION TO DISMISS:

McKINNEY, District Judge.

This medical malpractice action comes before the Court on the joint motion to dismiss filed by defendants Ronald Steele, M.D., and Doctors Nourse, Mertz, Newman, Mosbaugh and Steele, Inc. ("the Corporation") Defendants contend, pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, that this Court lacks subject matter jurisdiction over the action and personal jurisdiction over them as defendants. Plaintiff has filed a brief opposing the motion to dismiss, and defendants filed their reply thereto on November 1, 1988. The matters raised are ready for resolution, and for the reasons set forth below, the Court hereby GRANTS the motion to dismiss.

### I. *Background of the Case:*

The plaintiff's complaint sets forth the following allegations. Plaintiff Rosemary Castelli is an Illinois resident, while defendant Ronald Steele and Doctors Inc. are Indiana domiciliaries. On June 7, 1985, the plaintiff underwent a medical procedure for kidney stones at Methodist Hospital in Indianapolis. Defendant Steele performed the procedure. Thereafter, Dr. Steele and the plaintiff maintained a doctor-patient relationship through September, 1986.

In July, 1986, Mrs. Castelli experienced further problems with her kidneys and con-

sulted Dr. Feeney, a physician in her home state of Illinois. Dr. Feeney recommended that she have her kidneys dilated. Mrs. Castelli then requested a second opinion from Dr. Steele who rendered the opinion that it was not necessary to have her kidneys dilated.

In September of 1986, Mrs. Castelli transferred to another urologist in Illinois. This doctor eventually referred her to the Mayo Clinic in Minnesota where it was determined that Mrs. Castelli had an abscessed left kidney. After treatment proved unsuccessful, the left kidney was removed.

Plaintiff charges Dr. Steele with negligence in failing to inform her of the possibility of losing her kidney, and in failing to properly diagnose and treat her for her kidney ailments. Plaintiff charges Dr. Steele's Corporation with derivative liability for the acts of Dr. Steele as agent for the Corporation.

■ Defendants Steele and the Corporation have moved to dismiss the complaint for lack of subject matter jurisdiction. They argue that Indiana substantive law applies to this diversity suit, and that Indiana's Medical Malpractice Act requires a medical malpractice claim against a qualified health care provider to be brought before a medical review panel before any action can be maintained in a court of law. Defendants attach an affidavit from the manager of the Indiana Insurance Department's Patients Compensation Fund. In her affidavit, the records custodian states that Dr. Steele and the Corporation have been and are qualified health care providers as defined in the Indiana Medical Malpractice Act, and that no medical review panel opinion has been rendered on the plaintiff's claims against the defendants.

Accordingly, defendants argue that plaintiff has failed to meet the jurisdictional prerequisites for bringing a malpractice action under Indiana law.[1]

In response to the motion to dismiss, plaintiff acknowledges the jurisdictional prerequisites of the Indiana Medical Malpractice Act. She contends, however, that Illinois substantive law should apply to this diversity action. Mrs. Castelli asserts that under Indiana's choice of law rules the significant contacts of the action are with Illinois rather than Indiana. In support of this line of reasoning, she attaches her affidavit in which she states that in July, 1987, she telephoned Dr. Steele from Illinois. During this interstate phone call Dr. Steele advised Mrs. Calstelli not to have her kidney flushed. Moreover, she asserts, all of her injuries occurred while she was in the state of Illinois.

With this background the Court will now address the issues raised.

## II. *Choice of Law:*

■ The primary issue before the Court is whether Indiana or Illinois law applies to this malpractice action. A federal district court sitting in diversity must follow the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *International Administrators, Inc. v. Life Insurance Co. of North America,* 753 F.2d 1373, 1376–77 (7th Cir.1985). Thus, this Court must follow Indiana's choice of law rules to determine which state's substantive law applies. *Knoblett v. Kinman,* 623 F.Supp. 805, 806 (S.D.Ind. 1985).

Indiana, like a number of other states, has historically followed the *lex loci delicti* choice of law rule for torts, which invokes

---

1. Defendants also summarily state in their motion to dismiss that dismissal is proper under Fed.R.Civ.Proc. 12(b)(2) for want of personal jurisdiction. Defendants fail, however, to separately brief the issue of personal jurisdiction as required by Local Rule 9.

Any such argument based on personal jurisdiction would, of course, be unavailing, for it is readily apparent from the complaint, and bolstered by the defendants' arguments for applying Indiana substantive law, that the defendants

have purposefully availed themselves of the benefits of the forum State to satisfy modern "minimum contacts" personal jurisdiction analysis. *See generally, Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); 4 Wright and Miller, *Federal Practice and Procedure* §§ 1061–1069 (2d ed. 1987). There can be no doubt but that personal jurisdiction exists over the defendants in this instance.

the substantive law of the state in which the tort was committed. *Burns v. Grand Rapids and Indiana Railroad Co.*, 113 Ind. 169, 15 N.E. 230 (1888); *Louisville & N.R. Co. v. Revlett*, 224 Ind. 313, 65 N.E.2d 731 (1946); *Lee v. Lincoln National Bank & Trust*, 442 N.E.2d 1147 (Ind.App.1982). Under the *lex loci delicti* rule, the tort is said to have been committed in the state "where the last event necessary to make an actor liable for the alleged wrong takes place." *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987); Scoles, Hay, *Conflict of Laws* § 17.2, at 552 (Lawyer's ed. 1984). Such a rule is rather mechanical and easily applied in ordinary tort cases. As one commentator has noted, "In the substantial number of cases where the wrongful conduct and the injury occur in the same state, this rule works reasonably well." Scoles, Hay, *Conflict of Laws* § 17.2, at 552 (Lawyer's ed. 1984). When the injury and the tortious conduct do not coincide, however, the rule may produce curious results.

In recent years, however, a number of states have reconsidered the formal application of such a rule. *See, e.g., Fox v. Morrison Motor Freight, Inc.*, 25 Ohio St.2d 193, 267 N.E.2d 405 (1971) (*lex loci delicti* will not be automatically applied by Ohio courts); Scoles, Hay, *Conflict of Laws* § 17.21, at 587–88 (Lawyer's ed. 1984) Just last year the Indiana Supreme Court recognized the problem and re-examined the choice of law rules for tort cases. In *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind.1987), the court took a close look at the *lex loci delicti* rule, and determined that it should not always be rigidly applied without consideration of other factors. The Indiana Supreme Court recognized that "[c]hoice-of-law rules are fundamentally judge-made and designed to ensure [that] the appropriate substantive law applies." *Hubbard*, 515 N.E.2d at 1073. As such, the court found it appropriate to slightly modify the traditional choice of law rule for torts to ensure that "anomalous result[s]" are not reached in certain instances. *Id.*

The new rule announced by the *Hubbard* court involves a three step process.[2] First, the trial court is to ask where the last event necessary to give rise to liability occurred. "In a large number of cases, the place of [injury] will be significant and the place with the most contacts." *Hubbard*, 515 N.E.2d at 1073. "In such cases, the traditional rule serves well" and should be applied. *Id.* Thus, if the place of injury is State A, and State A also has significant contacts with cause of action (such as the conduct complained of occurring there, parties residing there, etc.,), the inquiry is at an end and the law of State A applies. *Accord, Gollnick v. Gollnick*, 517 N.E.2d 1257, 1258 (Ind.App.1988).

The second step is to then ask whether the place of the injury "bears little connection to the legal action...." *Hubbard*, 515 N.E.2d at 1073. This inquiry seeks to ensure that anomalous results are avoided in applying the law of a state that bears only insignificant contact to the cause of action. If the state in which the injury occurred does have other sufficient connection with the lawsuit, then the inquiry is at an end and that state's law applies. *Hubbard*, 515 N.E.2d at 1073.

However, if the place of injury does not have significant contacts with the action, the third step of *Hubbard* is reached, and other factors are considered such as:

1) the place where the conduct causing the injury occurred;

2) the residence or place of business of the parties; and

3) the place where the relationship is centered.

*Hubbard*, 515 N.E.2d 1071, 1073–74 (*citing Restatement (Second) of Conflicts of Laws* § 145(2) (1971)). "These factors should be evaluated according to their relative importance to the particular issues be-

**2.** One panel of the Indiana Court of Appeals has written that *Hubbard* involves a two-step analysis, with the first step involving a two part inquiry. *See Gollnick v. Gollnick*, 517 N.E.2d 1257 (Ind.App.1988). For simplicity sake, however, this Court will refer to *Hubbard* as requiring a three pronged analysis, for as the *Hubbard* and *Gollnick* opinions make clear, there are three separate inquiries.

ing litigated." *Hubbard,* 515 N.E.2d at 1074.

In this case, then, the first step under *Hubbard* is to determine where the last event necessary to make the defendants liable for the alleged tort took place. *Hubbard,* 515 N.E.2d at 1074. The last event giving rise to liability is, of course, damage or injury, because there is no liability absent injury. Scoles, Hay, *Conflict of Laws* § 17.2, at 552 (Lawyer's ed. 1984) ("The place of the wrong is usually the place where the injury occurred because liability does not arise absent injury."). In most cases this is simply the state in which the tortious conduct occurred, for the conduct complained of and the resultant injury typically coincide in the ordinary tort action. Scoles, Hay, *Conflict of Laws* § 17.2, at 552 (Lawyer's ed. 1984). Thus, it is not uncommon for courts in routine tort cases to speak in terms of "the place of the tort" without specifically identifying the last event necessary to bring about liability. *See, e.g., Lee v. Lincoln National Bank & Trust,* 442 N.E.2d 1147, 1148 (Ind.App. 1982) (in a routine automobile negligence case, the court summarized Indiana choice of law analysis for torts, writing, "Simply stated, the law of the location of the tort is applicable in a tort action for recovery of damages").

However, the courts have recognized that in tort cases involving conduct such as fraud it is not uncommon for the last event giving rise to liability to occur at a different time and in a different state than that in which the tortious conduct occurred. For instance, Indiana courts have noted that in fraud cases the "tort is considered to have been committed in the state where the loss occurred, typically because that is where the last event necessary to create liability has taken place." *See Eby v. York–Division, Borg–Warner,* 455 N.E.2d 623, 626 (Ind.App.1983); *Zandman v. Joseph,* 102 F.R.D. 924, 925 (N.D.Ind.1984).

Thus, when the Indiana courts refer to "the place of the tort," they are in reality asking where the place of *injury* is, for that is always the last event giving rise to a cause of action against the tortfeasor. This Court's first inquiry, then, is not the general question of where the tort occurred; rather, it entails a specific examination of the facts to determine where the injury, that is, the last event giving rise to the plaintiff's complaint, occurred.[3]

---

**3.** This may at first glance seem odd because it is plainly evident here that the negligence occurred in Indiana. However, when the Indiana courts use the term "place of the tort", they are speaking in general terms and usually in cases in which the place of the *negligence* is the same as the place of the *injury.* As the cases make clear, the crucial factor is "the last event;" that is, where did the last event occur that is necessary to give rise to liability? *See e.g., Hubbard,* 515 N.E.2d at 1073 ("The tort is said to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place"). The commentators further affirm that the place of injury is the focus of *lex loci delict* analysis. *See, e.g.,* Scoles, Hay, *Conflict of Laws* § 17.2, at 552 (Lawyer's ed. 1984)

Many fraud cases have typically spoken of the place of loss as being determinative for choice of law purposes because given the very nature of the conduct complained of (misrepresentation inducing detrimental reliance), the plaintiff is usually not harmed until some time after the tortious conduct has subsided. Because of this time delay (which is inherently recognized by Indiana's statute of limitations for fraud actions, *see Ind.Code* §§ 34–1–2–1, 34–1–2–9), it is logical to look to the place of the injury for choice of law purposes.

So too in medical and legal malpractice actions it is often necessary to look to the place of injury rather than just the tortious conduct, for the injury (and liability therefor) often does not accrue until well after the negligent activity has ceased. This is *not* to say that there is a separate choice of law rule for malpractice mis-diagnosis actions; to the contrary, just as in fraud cases, it may be necessary in many malpractice cases to specifically delineate between the *place of the tortious conduct* and the *place of the injury*—but only because under the facts presented the two might not be one in the same.

Any confusion could be avoided in the future if the Indiana courts and practitioners were to follow the lead of Chief Justice Shepard in the *Hubbard* opinion by speaking solely in terms of the "last event", or follow other jurisdictions by talking in terms of "the place of injury," rather than referring to the "place of tort" for *lex loci delicti* choice of law purposes. *See, e.g., Fort Howard Paper Co. v. William D. Witter, Inc.,* 787 F.2d 784 (2d Cir.1986) (New York's *lex loci delicti* looks to state where plaintiff's injury occurred); *Davis v. National Gypsum Co.,* 743 F.2d 1132 (5th Cir.1984) (Mississippi law looks to place of injury). This distinction is purely one of semantics, but one that could help avoid

Here, defendants are charged with various forms of medical malpractice. The complaint specifically charges that Dr. Steele failed to obtain Mrs. Castelli's informed consent to the treatment he rendered in Indianapolis, and that the medical procedures used were inappropriate. Further, it is alleged that Dr. Steele was negligent in rendering advice during a phone call initiated by Mrs. Castelli (while she was in Illinois) in that his advice not to have her kidneys dilated was based on outdated x-rays. Clearly, all these alleged acts of negligence occurred in Indiana in Dr. Steele's Indianapolis office.

As noted, however, the place of the tortious conduct is not the inquiry. Here Mrs. Castelli does not allege that she was damaged until some time after the negligence. Specifically, she claims that the doctors at the Mayo Clinic did not determine that her left kidney was abscessed until more than a year after Dr. Steele rendered his advice. Thus, it appears from the complaint and the affidavits that the last event necessary to produce liability, specifically the personal injuries alleged, did not occur in Indiana at the time of treatment. Rather, they appear to have arisen some time after the alleged negligence while Mrs. Castelli was in the state of Illinois. Accordingly, the true "place of the tort", that is, the place of injury, might well be in Illinois.[4]

If the last event necessary to invoke liability occurred in Illinois, the traditional doctrine of *lex loci delicti* would mandate application of Illinois law, despite the fact that the more significant contacts are rooted in Indiana. This case thus presents a prime example of the "anomalous results" that the Indiana Supreme Court sought to avoid in *Hubbard*.

Assuming arguendo that the injury did not arise until after the the plaintiff returned to Illinois, the second step of the *Hubbard* test is reached. Here it is necessary under the *Hubbard* rule to ask whether Illinois has sufficient contacts with the legal action to require application of Illinois substantive law. *Hubbard*, 515 N.E.2d at 1073. If the state of Illinois bears "little connection" to the action, then the other factors enumerated by the Indiana Supreme Court must be evaluated in relation to their relative importance to the action, all in an effort to ensure that an "anomolous result" is avoided. *Id.* at 1073–74.

Under the facts of this case, it is clear that the state of Illinois bears "little connection" to the cause of action. The only contacts with Illinois are that the injury accrued there, the plaintiff resides there, and that a phone call to Dr. Steele originated from there; no other contacts are alleged. However, just as in *Hubbard*, these facts have little relationship to this medical malpractice action. *Compare, Hubbard*, 515 N.E.2d at 1074. Accordingly, because Illinois bears little connection to the lawsuit, it is appropriate to reach the third step of *Hubbard* and evaluate other factors to determine which state's substantive law is to be applied.[5]

Among the other factors to be considered are the state in which the negligence occurred, the parties' residence, and that state in which the relationship was centered. *Hubbard*, 515 N.E.2d at 1074. In this case, all of these factors favor application of Indiana law. Here each act of negligence complained of occurred in Indiana. This is probably the most important factor because Indiana doctors are strictly regulated by the state of Indiana and must conform their practices to the

---

confusion in the application of Indiana's choice of law rules.

**4.** This Court need not make this determination on the record now existing because the Court is convinced that even if the injury occurred in Illinois, *Hubbard* would mandate application of Indiana law.

**5.** Although the *Hubbard* decision is well-reasoned, it does not provide a definitive standard for determining whether a state in which the

injury occurred bears "little connection" to the cause of action so as to reach the third level of inquiry. *See Consolidated Rail Corp v. Allied*, 692 F.Supp. 924, 927 (N.D.Ind.1988) (noting lack of a standard) This term of art will no doubt be clarified by subsequent decisions, *Allied*, 692 F.Supp. at 927, but is sufficiently workable under facts such as these where the only possible conclusion is that Illinois bears little connection to the lawsuit.

laws of this state. Additionally, defendant Steele, his corporation, and all the other doctors in the corporation are Indiana residents. The doctor-patient relationship was initiated in Indiana, and all of the diagnosis and treatment was rendered in Indiana. The mere fact that plaintiff resided in Illinois and might well have developed her injuries there does not outweigh the more significant Indiana contacts. *Cf., Hubbard*, 515 N.E.2d at 1074. Accordingly, Indiana substantive law applies to this medical malpractice action.[6]

### III. *Indiana's Medical Malpractice Act:*

Because Indiana substantive law applies to this medical malpractice action, the formalities of Indiana's Medical Malpractice Act, *Ind.Code* § 16–9.5–1–1, must be followed. Specifically, the Act provides that "no action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel." *Ind.Code* § 16–9.5–9–2. It is well settled under this provision that any medical malpractice action filed in an Indiana court must be dismissed without prejudice for want of jurisdiction if an opinion has not first been obtained by a medical review panel. *See Hines v. Elkhart General Hospital*, 603 F.2d 646 (7th Cir.1979) (Act is applicable in diversity action and requires dismissal for lack of subject matter jurisdiction if not complied with); *Johnson v. Methodist Hospital of Gary*, 547 F.Supp. 780, 781 (N.D.Ind.1982) (dismissal without prejudice is the proper remedy for failure to obtain panel opinion); *Detterline v. Bonaventura*, 465 N.E.2d 215 (Ind.App.1984); *Knoblett v. Kinman*, 623 F.Supp. 805 (S.D. Ind.1985).

■ In this case there is no dispute that plaintiff had not obtained a medical review panel prior to filing this lawsuit. As the cases cited above demonstrate, this Court thus lacks subject matter jurisdiction over the action. Accordingly, the cause of action must be dismissed without prejudice.

■ Plaintiff argues, however, that because she has just recently filed a proposed complaint with the Indiana Department of Insurance to be evaluated by a medical review panel, this Court should stay this action until such time that the panel renders its opinion. The Court declines to do so for two reasons.

First, subject matter jurisdiction is determined as of the date a complaint is filed in federal court. *See, e.g., Hoefferle Truck Sales Inc. v. Divco–Wayne Corp.*, 523 F.2d 543 (7th Cir.1975); 13B Wright and Miller and Cooper, *Federal Practice and Procedure* § 3608 (2d ed. 1984). Subsequent changes generally do not affect the district courts' subject matter jurisdiction. Here, Mrs. Castelli has not demonstrated that this Court even has the authority to retain an action over which it is convinced it does not have subject matter jurisdiction. And, assuming arguendo that the Court did have such authority, the Court would nevertheless dismiss the action. No compelling reason has been shown for this federal court to retain a case in which nothing can occur until an Indiana medical review panel renders an opinion. This is particularly so when the propsed complaint was just filed last month with the Insurance Department and will thus likely be before a medical review panel for a significant amount of time. Should plaintiff desire this federal forum after the administrative review is complete, she will of course be free to refile at that time.

### VI. *Conclusion:*

Thus, under Indiana's choice of law rules announced in *Hubbard*, although Illinois may well be the state where the injury complained of occurred, Illinois otherwise bears little connection to the cause of action. Because Indiana has significant con-

---

**6.** Defendant's additional argument that the public policy exception to the *lex loci delicti* rule would be applicable if the *Hubbard* analysis resulted in application of Illinois is persuasive but need not be reached by this Court. *See*

*generally, Trahan v. E.R. Squibb & Sons, Inc.*, 567 F.Supp. 505, 509–10 (M.D. Tenn. 1983) (example of application of the public policy exception).

tacts with the cause of action, Indiana substantive law applies. As the plaintiff failed to obtain a medical review panel opinion before filing her lawsuit as is required by Indiana statute, this Court lacks subject matter jurisdiction over the action. Accordingly, the cause is hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.