**KPMG PEAT MARWICK,**
Appellant–Defendant,

v.

Tony H. **ASHER** and Stephen Crosby, Individually and on behalf of all other persons similarly situated, Appellees–Plaintiffs.

No. 29A04–9702–CV–66.

Court of Appeals of Indiana.

Dec. 30, 1997.

Rehearing Denied Feb. 19, 1998.

David E. Wright, Bradley C. Morris, Alice McKenzie Morical, Johnson, Smith, Pence, Densborn, Wright & Heath, Indianapolis (James D. Goldsmith, KPMG Peat Marwick LLP, New York City, of counsel), for Appellant-Defendant.

Alan S. Brown, Julia Blackwell Gelinas, Robert W. Wright, Locke Reynolds Boyd & Weisell, Indianapolis, for Appellees-Plaintiffs.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

KPMG Peat Marwick appeals the trial court's summary judgment ruling that Missouri substantive law applies to the plaintiffs' class action claim against it, and the denial of its motion for summary judgment on the plaintiffs' claims of negligent accounting and fraud.

We affirm in part and reverse in part.

### ISSUES

1. Whether the trial court correctly determined that Missouri law governs this action.

2. Whether the plaintiff farmers could recover on a negligent accounting claim.

3. Whether the plaintiff farmers could recover on a fraud claim.

### FACTS

In 1990, Merchants Grain, Inc. ("MGI") was a Delaware corporation operating fourteen grain elevator/warehouse facilities, six of which were in Indiana. MGI's corporate headquarters and principal offices were in Missouri.

MGI engaged KPMG Peat Marwick in Missouri to audit and report on MGI's consolidated statements of operations, stockholders' equity, and cash flows and consolidated balance sheets as of May 26, 1989, and June 1, 1990. Peat Marwick issued its independent auditor's report on MGI's financial condition on August 30, 1990. In order to renew its license under the U.S. Warehouse Act, MGI forwarded the report with accompanying financial statements to the USDA's office in Kansas City, Missouri, the next day. MGI's warehouse license was renewed by the USDA.

Tony Asher and Stephen Crosby are Indiana farmers who each deposited his grain on a credit sale basis at an MGI elevator after the USDA received the 1990 audited financial statements. Asher lost $109,-351.90, and Crosby lost $84,231.60, when grain they deposited at the MGI facility in Roachdale, Indiana, from the fall 1990 har-

vest was not paid for by MGI. MGI filed for bankruptcy.

Asher and Crosby (hereafter, "the farmers") brought this action on behalf of a certified class of plaintiffs consisting of the following:

All individuals or entities who sold, stored or deposited grain to or with Merchants Grain, Inc. or its subsidiaries ("MGI") in Indiana, who are entitled to, but did not receive, payment for or return of deposited grain from MGI after September 11, 1990.

(R. 353). The farmers alleged that MGI was only able to take their grain because Peat Marwick's negligent audit of financial statements allowed MGI to maintain its federal license and keep its doors open. Specifically, their complaint alleged that "[h]ad the financial statements fairly portrayed the financial condition of MGI in all material respects, MGI would not have been eligible for USDA licensing." (R. 20).

Peat Marwick moved for summary judgment, seeking application of Indiana law on the plaintiffs' cause of action and further contending that as a matter of law Peat Marwick could not be found negligent because it owed no legal duty to the farmers and could not be liable for fraud because no actual reliance by the farmers on Peat Marwick's auditing work had been shown. The plaintiffs filed a cross-motion for summary judgment, seeking application of Missouri law, and opposed Peat Marwick's motion by asserting the existence of issues of material fact.

The trial court followed the analysis of *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind.1987), as applied by *Castelli . v. Steele*, 700 F.Supp. 449 (S.D.Ind.1988), and concluded that Missouri substantive law applied to this action. Using Missouri's accountant negligence law found in *Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W.2d 378, 383 (Mo.App.1973), the trial court found that material questions of fact existed

as to the foreseeability of harm to the plaintiffs, the degree of certainty of injury, and the closeness of the connection between the two parties.

(R. 647). Therefore, the trial court denied summary judgment "as to the issue of ultimate liability." (R. 648). The trial court then certified its order on the application of Missouri law to this action and its denial of summary judgment to Peat Marwick as to "the nature and scope of the duty, if any, owed by Peat Marwick to Plaintiffs; and whether Plaintiffs' fraud claim fails as a matter of law" for interlocutory appeal. (R. 659).

## DECISION

Summary judgment is an appropriate disposition when the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind.Trial Rule 56(C). We apply the same standard on the appeal of a ruling on a motion for summary judgment. *See Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 562 (Ind.1992); *Nobles v. Cartwright*, 659 N.E.2d 1064, 1069 (Ind.App. 1995). Our review considers only those matters that were designated at the summary judgment stage. *Nobles*, 659 N.E.2d at 1070. We construe all facts and inferences in favor of the non-moving party, and will resolve any doubt with regard to the existence of a material issue or the reasonable inference to be drawn therefrom in favor of the non-moving party. *Id.* Where the trial court has incorrectly applied law to undisputed facts in ruling upon a motion for summary judgment, we will reverse the ruling upon appeal. *Id.* at 1077.

In support of summary judgment, Peat Marwick designated evidence showing that its audit of MGI's financial statements was conducted primarily out of its St. Louis office. Its designated evidence also cited deposition testimony and interrogatory responses from both Asher and Crosby indicating that neither had ever read any MGI financial statement or relied upon any auditor's report or any representations made by Peat Marwick, and further that the farmers were not aware of the audit "until sometime after MGI closed its doors and ceased doing business." (R. 423).

In opposition to summary judgment, the farmers submitted affidavits stating that Asher and Crosby had

dealt solely with grain companies licensed by [USDA]. [They] engaged in the [instant] credit sales of grain ... because MGI possessed a USDA license to engage in this business. [They] knew that in order to be licensed, MGI was required to demonstrate to the government that it possessed the financial wherewithal to engage in credit sales and warehousing of grain. [They] knew that MGI was subject to financial audits and other reporting procedures in order to protect farmers who rely upon grain companies to meet their obligations to pay for credit grain transactions.

(R. 505, 511). Both further averred that in "reliance on MGI's licensed status, [they] made credit sales of grain for which MGI did not pay." *Id.*

The farmers also submitted as designated evidence the Peat Marwick work papers for the 1990 audit, which contained a handwritten note reading as follows:

> The enclosed is the U.S. Warehouse Act and the related requirements that grain warehouses have to be in compliance with (i.e. for the USDA). Note that the USDA requires audited F/S within 90 days after year-end.

(R. 521). USDA regulations are attached to the work papers and Section 102.6, "Financial requirements" is marked with an arrow. This section states that the necessary financial statements "shall" be audited by an independent certified public accountant, (R. 527), and provides a minimum net worth for the license holder. Further, a Peat Marwick planning memorandum for the audit stated as follows:

> MGI has sustained large operating losses in the prior year (approximately $4.6 million) and again in the current year (presently stated @ approx. $1.2 million). This is a major concern due to the regulatory requirements of the USDA....

(R. 557–58). The farmers also submitted the Peat Marwick audit report, with the attached financial statements indicating that MGI had a net worth of $5,315,661 as of June 1, 1990.

The USDA-issued license itself is not included in the designated evidence. Nor is there any evidence from the USDA or about any communications between USDA and either the farmers or Peat Marwick.[1]

### 1. *Choice of Law*

According to Peat Marwick, the trial court correctly used the choice of law principles enunciated in *Hubbard,* 515 N.E.2d 1071, and as applied in *Castelli,* 700 F.Supp. 449, but erred in the result it reached—that Missouri law applied. *Hubbard* moved Indiana away from rigid application of the traditional rule of *lex loci delicti,* which held the tort "to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Hubbard,* 515 N.E.2d at 1073. Our supreme court found rigid application of the rule could "lead to an anomalous result" in some instances. 515 N.E.2d at 1073. Such occurs when the place of "the injury and the tortious conduct do not coincide." *Castelli,* 700 F.Supp. at 452.

Under *Hubbard,* the first step in the choice-of-law analysis is

> to ask where the last event necessary to give rise to liability occurred. "In a large number of cases, the place of [injury] will be significant and the place with the most contacts." [ ] "In such cases, the traditional rule serves well" and should be applied.

*Castelli,* at 452 (citing *Hubbard* at 1073). In the instant case, the parties agree that Indiana was the place of the injury.

The second step is to then ask whether the place of injury "bears little connection" to the instant legal action. *Hubbard* at 1074. In *Hubbard,* the plaintiff's decedent (an Indiana resident) died in the course of his employment in Illinois, but the cause of action was a product liability claim against the Indiana manufacturer of the equipment he was using at the time of his death. The facts that his death and a coroner's inquest occurred in Illinois, and that the decedent's survivors were receiving benefits under the Illinois

---

1. Although various contentions were put forth by counsel at the oral argument held in Indianapolis on November 18, 1997, and in arguments of counsel at the summary judgment hearing before the trial court, we found no evidence of record indicating the specific accounting improprieties to which counsel in both instances referred.

Workmen's Compensation laws were found not to "relate[ ] to the wrongful death action" against the Indiana equipment manufacturer, and the "place of the tort" was therefore "insignificant" to the suit. *Id.*

In *Castelli*, the plaintiff was an Illinois resident upon whom a kidney-related medical procedure was performed by an Indiana physician. She experienced subsequent difficulties and telephoned the Indiana physician to ask whether she needed certain additional treatment recommended by another physician. The Indiana physician opined that this treatment was not necessary. When the plaintiff's kidney problems worsened and she suffered the loss of a kidney, she brought a medical malpractice action against the Indiana physician. After determining that the place of the injury was Illinois, the court then considered whether Illinois bore " 'little connection' to the cause of action." 700 F.Supp. at 454 (citing *Hubbard* ). The court found the facts that the injury occurred in Illinois, the plaintiff resided in Illinois, and the plaintiff called the Indiana physician from Illinois to "have little relationship to this medical practice action." *Id.*

■ Peat Marwick insists that the trial court erred when it found that "nearly 600 farmers conducting business at Indiana grain elevators in alleged reliance upon the existence of a USDA license posted on the wall constituted insignificant contacts with Indiana." Appellant's Brief at 12. This argument improperly focuses on a quantitative view of state contacts which in a class action would dictate a result based upon the number of plaintiffs. Here, the farmers alleged accounting negligence on the part of Peat Marwick. Specifically, they claim Peat Marwick failed to adequately audit MGI's financial statements. Designated evidence indicated the audit was prepared by Peat Marwick in Missouri, for a client whose principal place of business was Missouri, for submission to a Missouri office of USDA, which office then relicensed MGI. The presence of these facts in an action for accountant negligence render insignificant, in a choice-or-law analysis, the Indiana nature of the farmers' contacts.[2]

Therefore, because "the place of the tort bears little connection to the legal action," *Hubbard* at 1074, we consider the additional factors "such as 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered" and evaluate them "according to their relative importance to the particular issues being litigated." *Id.* at 1073–74. In this case, the "place where the conduct causing the injury occurred," *id.*, was Missouri, where virtually all of the acts of the alleged negligent audit occurred. This is even more clear given *Castelli* 's rephrasing of the first factor as "the state in which the negligence occurred." 700 F.Supp. at 454. The *Castelli* court considered that "each act of negligence complained of occurred in Indiana" was paramount because of Indiana's interest in regulating its doctors. *Id.* It further noted the "doctor-patient relationship was initiated in Indiana, and all of the diagnosis and treatment was rendered in Indiana." *Id.* Here, also, the paramount factor is that each of the allegedly negligent acts occurred in Missouri. Thus, Missouri has a substantial interest in applying its law "on a professional negligence case" to accountants conducting "their professional activity" in Missouri, as the trial court put it. (R. 704). Moreover, paralleling *Castelli*, the accountant-client relationship existed in Missouri, and Peat Marwick's auditing work—comparable to diagnosis and treatment by a physician—was conducted in Missouri. Such facts further support application of Missouri law.

Choosing the appropriate state substantive law is a decision to be made by the court. *Travelers Ins. Cos. v. Rogers*, 579 N.E.2d 1328 (Ind.Ct.App.1991). Because Missouri has the most significant contacts with the question of whether or not accountant negligence took place, we conclude that Missouri law is applicable, and the trial court properly so held.

### 2. *Negligence*

Peat Marwick next argues that under Missouri law, it is entitled to summary judgment

---

**2.** The additional facts that Peat Marwick also conducts public accounting in Indiana and that MGI filed for bankruptcy in Indiana, stressed in the appellant's brief but not in its reply, are similarly unrelated to the negligence alleged here.

on the farmers' negligence claim because the farmers cannot show that they are owed a duty by the accountants hired by MGI. The critical case, as noted by the trial court, is *Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W.2d 378 (Mo.App.1973).

In *Aluma Kraft*, the Missouri court considered whether a cause of action for negligent performance of an audit by accountants could withstand a motion to dismiss for failure to state a claim. The issue was whether certified public accountants have a duty to exercise due care to protect a third party from economic injury and are liable for damages caused by their alleged negligence to the third party not in privity with the accountant when the third party relies on the alleged negligent audit to its damage. *Id.* at 379. After a comprehensive analysis of the law in this regard, the *Aluma Kraft* court stated that

> in the determination of whether an accountant will be held liable to a third person not in privity involves the balancing of several factors: (1) The extent of which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that the plaintiff suffered injury; and (4) the closeness of the connection between the defendant's conduct and the injury suffered.

*Lindner Fund v. Abney*, 770 S.W.2d 437, 438 (Mo.App.1989) (explaining *Aluma Kraft*). Accordingly, *Aluma Kraft*

> held that the law extends liability to third parties for whose benefit and guidance the accountant supplies the information, or to such third persons, although not identified[,] who the accountant knows the recipient of the audit intends to supply such information.

*Id.* Finding the declared factors satisfied, the *Aluma Kraft* court concluded that where the allegations of the complaint showed that the accounting firm knew (1) its opinion would be utilized by the plaintiff, who was a specific potential purchaser of the company audited; (2) a purchase of the stock was contemplated;

(3) the purchase price was to be computed based upon the audit; and (4) the audit would be furnished to this potential purchaser, and when the complaint further showed that the purchaser closed the transaction for the purchase of the stock at the price computed in accordance with the balance sheet determined by the auditors in the audit statement, an action for negligent accounting was a cognizable claim for relief.

Peat Marwick notes that the farmers have conceded that they did not rely upon the audit, having neither seen it nor been aware of its existence when they sold their grain on credit to MGI. Further, no evidence shows Peat Marwick to have known the audit was to be used by any entity other than USDA or known that MGI intended to supply the information to "prospective users" other than USDA. *Id.* at 383.

The farmers contend that the designated evidence shows

> Peat Marwick knew (1) that the financial statements it audited for MGI would be forwarded to the USDA; (2) that the USDA required warehousemen to submit audited financial statements to meet federal licensing requirements; (3) that those licensing requirements included the requirement that MGI have a positive net worth; and (4) that the licensing requirements were intended for the protection of farmers who delivered crops for storage at MGI's elevators.[3]

Appellees' Brief at 23. The farmers further note the allegation in their complaint that Peat Marwick "knew, or should have known, that persons who farm and sell grain ... rely upon USDA licensure to assure that companies engaged in the credit purchase of grain, such as MGI, have the ability to pay for grain purchased on credit." (R. 20). According to the farmers, application of the *Aluma Kraft* policy factors to these facts leads to the conclusion that they were owed a duty by Peat Marwick.

---

**3.** A Peat Marwick professional development booklet on the subject of agribusiness commodities accounting and auditing discusses various governmental agencies which "affect the entities in the commodities industry," (R. 602), and describes the U.S. Warehouse Act as established "to provide a measure of protection for farmers delivering crops for storage to public warehouses and to facilitate financing arrangements for stored grain and other agricultural products." (R. 603).

However, the *Aluma Kraft* rule is that "[i]n order for an accountant to be held to a legal duty to a third party not in privity, the third party must be a known recipient or be within the limited class of persons the services were intended to benefit and guide." *Lindner*, 770 S.W.2d at 438 (citing *Aluma Kraft*); *see also MidAmerican Bank & Trust Co. v. Harrison*, 851 S.W.2d 563, 566 (Mo.App.1993), *trans. denied.* There is no evidence that Peat Marwick knew farmers would receive the audit, and no evidence that Peat Marwick intended the audit to benefit or guide farmers. The farmers would have us expand Missouri law. We would add to *Aluma Kraft* if we used Peat Marwick's knowledge that MGI would supply the audit to USDA and equated it to knowledge that the farmers would rely upon the USDA's having relied upon the audit. Similarly, using Peat Marwick's knowledge that the federal warehouse statute is to benefit farmers to establish the farmers' being in the class of persons the audit was intended to benefit ignores the holding of *MidAmerican Bank,* where the accountant's preparation of a financial statement and audit for one bank was held insufficient to establish that a second bank was within a foreseeable class of others who could have been expected to rely thereon. 851 S.W.2d at 566. Thus, neither theory comports with the Missouri law definition of an accountant's duty to a third party.

Based on the designated evidence, Peat Marwick owed no duty to the farmers. Because the trial court incorrectly applied the law in ruling on Peat Marwick's motion for summary judgment, we reverse, *see Nobles,* 659 N.E.2d at 1070, and remand for the trial court to enter summary judgment in favor of Peat Marwick on this issue.

### 3. *Fraud*

Peat Marwick further argues that the plaintiffs' fraud claim "must fail because they admit they never relied on any representation of Peat Marwick." Appellant's Brief at 6. Peat Marwick's motion also asked for summary judgment on the farmers' "vague allegations" seeking relief "under a theory of fraud." (R. 379). The trial court denied this portion of the order.

According to the Missouri supreme court, fraud

requires nine elements ...: a representation; that is false; that is material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury.

*State ex rel. PaineWebber v. Voorhees,* 891 S.W.2d 126, 128 (Mo.1995). Fraudulent misrepresentation contains the same elements. *Arnold v. Erkmann,* 934 S.W.2d 621 (Mo. App.1996). A failure to establish any one of the elements is fatal to recovery. *Carr v. Anding,* 793 S.W.2d 148, 151 (Mo.App.1990).

The farmers present no authority under Missouri law for a theory of indirect reliance, i.e. their reliance upon USDA's reliance on the audit. They cite *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291 (1976). We do not find the Minnesota case helpful, because here there was no comparable inquiry from the farmers to USDA about the financial well-being of MGI.

In the parlance of Missouri fraud law, the farmers would be the "hearers" of the alleged fraudulent representation. Applying the requirements for a fraudulent representation claim, the undisputed evidence shows that not only did the farmers not hear the purported fraudulent misrepresentation—the audit—but they have also admitted they did not rely on the audit when they sold their grain on credit to MGI. We reverse the denial of summary judgment in favor of Peat Marwick on the farmers' fraud claim, and remand for the trial court to enter judgment in favor of Peat Marwick thereon.

### CONCLUSION

We affirm the trial court ruling's that Missouri law applies to this claim, and we reverse the trial court's denial of Peat Marwick's motion for summary judgment on the farmers' negligent accounting and fraud claims.

SULLIVAN, J., concurs.

CHEZEM, J., dissents.