**Andrew B. SPARK, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**MBNA CORPORATION, MBNA America Bank, N.A., MBNA Marketing Systems, Inc., Richard K. Struthers, Terrance R. Flynn, David L. McGowan, and Mark C. Sullivan, Defendants.**

**No. CIV.A. 96–497–RRM.**

United States District Court, D. Delaware.

Feb. 20, 1998.

William L. O'Day, Jr., Wilmington, DE; Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Louise T. Walsh, Edelman & Combs, Chicago, IL; O. Randolph Bragg, Horowitz & Associates, Chicago, IL, for Plaintiff.

Kathleen M. Jennings, and Ann–Marie P. Sheely, Oberly, Jennings & Drexler, Wilmington, DE; Richard J. Urowsky, Richard C. Pepperman, II, and Sharon L. Nelles, Sullivan & Cromwell, New York City, for Defendants.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is a fraud and misrepresentation case. Plaintiff Andrew B. Spark alleges that defen-

dants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and breached their duty of good faith and fair dealing toward plaintiff by including misleading statements in their advertisements for credit card accounts. Plaintiff Spark is a resident of the state of Florida. Defendant MBNA Corporation is a bank holding company incorporated in Maryland. MBNA Corporation is the parent company of defendant MBNA America Bank, N.A. ("MBNA Bank"), a national bank. Defendant MBNA Marketing Systems, Inc. ("MBNA Marketing") is a subsidiary of MBNA Bank. MBNA Corporation, MBNA Bank and MBNA Marketing each have their principal place of business in Wilmington, Delaware. Defendant Struthers is a co-chairman and senior executive vice president of MBNA Bank. Defendant Flynn is a co-chairman and vice president of MBNA Bank. Defendant McGowan is the first vice president of MBNA Bank. Defendant Sullivan is an executive vice president of MBNA Bank.

On May 3, 1996, Spark filed a complaint in the United States District Court for the Middle District of Florida. On October 16, 1996, the case was transferred to this court. On July 22, 1997, Spark filed an amended complaint, and a motion to certify the action as a class action. Defendants oppose the motion.

Each side has submitted briefs on the issue, and accompanying affidavits. This is the court's decision on that motion.

## I. FACTUAL BACKGROUND

The court draws the following facts from the parties' briefs and affidavits.

Spark is an attorney licensed to practice law in Florida, New York and New Jersey. He primarily handles debt collection cases. He claims that he owns between 30 and 40 different credit cards.

In May 1995, Spark received an offer from MBNA Bank for a credit card. MBNA Bank offered Spark a special six-month promotional annual percentage rate ("APR") on cash advances and balances transferred from other credit cards. Spark accepted the offer and opened a VISA account with MBNA Bank.

Later that year, MBNA Bank sent Spark a letter offering to extend the 6.9% APR for another three months, through February 1996. The letter included a chart showing the amount of savings that one would receive with this low APR, compared to the amounts paid on "higher-interest credit card or department store bills." The table appeared as follows:

| Transfer Amount | $1,500 | $3,000 | $1,500 | $3,000 |
|---|---|---|---|---|
| **Annual Percentage Rate** | **21.0%** | **21.0%** | **13.9%** | **19.9%** |
| Six Months' Interest | $157.50 | $315.00 | $149.25 | $298.50 |
| Six Months' Interest at 6.9% APR | $51.75 | $103.50 | $51.75 | $103.50 |
| **Savings** | **$105.75** | **$211.50** | **$97.50** | **$195.00** |

The letter also explained that Spark could accept this offer by using enclosed "credit card access checks" for any bills or other expenses where he would normally use a personal check. Spark used these access checks.

MBNA Bank did not offer the 6.9% APR for any new purchases made with its credit card. For purchase balances, MBNA Bank charged an APR of 17.9%. The credit card agreement, which MBNA Bank sent out to customers with their new credit card, ex-

plained that payments on the card would be "allocated in a manner we determine."

MBNA Bank chose to apply the money that Spark paid onto his account to unpaid cash advance balances before unpaid purchase balances, and to new cash advance balances before new purchase balances. In other words, payments were first used to reduce the balances on which Spark was paying the 6.9% APR, and then any remaining amounts from the payment were used to reduce the balances on which Spark was

paying the 17.9% APR. Thus, if Spark had a pre-existing cash advance balance, made new purchases of $100, and then paid $100 to the account at the end of the month, MBNA Bank would apply this $100 to his cash advance balance and not his new purchase balance. He would then be required to pay the higher APR on the $100 in new purchases.

After discovering the way that MBNA Bank was applying his payments, Spark wrote a letter to MBNA Bank on October 23, 1995, complaining about the allocation method. He claimed that he had not been informed that if he had a purchase balance, his APR would be higher, and demanded that MBNA Bank forgive his entire balance on his VISA account and another MBNA Bank credit card account that he owned. He also stated that, in the absence of a reply, his plan was to "refer this matter to a national consumer plaintiff class action firm."

On May 3, 1996, Spark filed a complaint against MBNA Bank and the other defendants (collectively "MBNA"). He filed an amended complaint on July 22, 1997. Spark alleges that MBNA violated RICO by engaging in a scheme to defraud within the meaning of the federal mail and wire fraud statutes, 18 U.S.C. § 1341 and 1343. He also claims that MBNA Bank breached its contractual duty of good faith and fair dealing through its payment allocation methods. Finally, he claims that MBNA violated Delaware's unfair and deceptive practices law, 6 Del. C. § 2513.

Spark's counsel for this case includes Daniel A. Edelman, Esquire, from the law firm of Edelman & Combs in Chicago, Illinois. It also includes O. Randolph Bragg, Esquire from Chicago, Illinois. Since filing the complaint, Spark has worked with Bragg on approximately seven debt collection cases.

In the complaint, Spark purports to bring the action on behalf of himself and a class consisting of all persons who:

1. were sent advertising by MBNA Bank promoting a special low (6.9%–9.9%) introductory APR on cash advances and/or balance transfers;

2. opened a credit card account with MBNA Bank; and

3. used the card for purchases as well as cash advances and balance transfers.

Spark claims that the class period is four years prior to the filing of the complaint for the RICO claims, five years for the breach of contract claim, and three years for the Delaware unfair and deceptive practices claim. On July 22, 1997, Spark filed a motion to certify the class. This is the court's decision on that motion.

## II.  DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure lays out the prerequisites for a class action. Rule 23(a) states that a party may sue as a representative of a class only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class..

Rule 23(b) lists additional requirements for maintaining a class action. Among these, Rule 23(b)(3) requires that the court find that:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Third Circuit has indicated that class actions should be looked upon favorably. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.), *cert. denied, Weinstein v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985) (noting that for claims based on securities laws, "[c]lass actions are a particularly appropriate and desirable means to resolve claims"). The Supreme Court has also expressed its approval of class action proceedings, noting that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693

(1981). In *Eisenberg,* 766 F.2d at 785, the Third Circuit went so far as to declare that "'in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action.'" (citations omitted).

■ Accordingly, the standard for determining whether the class action prerequisites are met is rather lenient. In addition, in considering whether to certify a class, the court may not consider "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

MBNA challenges Spark's motion for class certification on three different grounds. First, MBNA claims that Spark does not satisfy the requirement that common questions of law or fact predominate over individual questions, as required by Rule 23(b)(3). Second, MBNA claims that Spark does not satisfy the typicality requirement of Rule 23(a)(3). Finally, MBNA claims that Spark does not satisfy the adequacy requirement of Rule 23(a)(4). The court will address each of these arguments in turn.

### A. *Do Common Questions of Law or Fact Predominate Over Individual Questions?*

■ Rule 23(b)(3) requires that questions of law or fact common to the class members "predominate" over questions affecting individual members. MBNA argues that the claims in the complaint can only be supported by a finding that each member of the class relied upon the advertisements, and that this determination must be made on an individual basis. MBNA claims that these individual question "overwhelm" the common ones.

Spark argues that this case is ideal for the class action approach. Each of the proposed plaintiffs' claims stem from the same general representation by MBNA, and the issues for each of these plaintiffs will be identical. Namely, whether MBNA's advertisements were misleading, and whether the average consumer would have been deceived by the advertisements. Spark argues that the court should approach this case by presuming reliance.

In support of its argument, MBNA cites *Basic Inc. v. Levinson,* 485 U.S. 224, 242, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988), and quotes a passage where the Supreme Court discussed the possibility that "proof of individualized reliance from each member of the proposed class" would lead to "individual issues ... overwhelm[ing] the common ones." However, the Court described this possibility as a reason to *avoid* requiring individual proof of reliance. The Court specifically found that the district court had properly certified a class by using a presumption of reliance, and that this method provided "a practical resolution to the problem of balancing the substantive requirement of proof of reliance ... against the procedural requisites of Federal Rule of Civil Procedure 23." *Id.* Moreover, the Third Circuit has specifically concluded that the "presence of individual questions as to the reliance of each [plaintiff] does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3)." *Eisenberg,* 766 F.2d at 786. *See also Easton & Co. v. Mutual Benefit Life Ins. Co.,* 1993 WL 89146 at *5 (D.N.J. Feb. 9, 1993) (explaining that "it is well-settled in this Circuit that individual issues as to reliance or damages do not negate predomination under Rule 23(b)(3)").

MBNA also cites *Rosenstein v. CPC Int'l, Inc.,* 1991 WL 1783 at *4 (E.D.Pa. Jan. 8, 1991), in which plaintiffs challenged claims the defendant made in its advertisements for Mazola oil. There, the court denied class certification because of individual questions of reliance, noting that for each class member, relevant questions would be "whether they saw the advertisements, whether they believed the advertisements, [and] whether they would have purchased Mazola notwithstanding the advertisements." *Rosenstein,* 1991 WL 1783 at *3.

However, the present case is distinguishable from *Rosenstein.* Generally, the court may presume reliance in a case "where it is logical to do so." *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 188 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71

L.Ed.2d 648 (1982). In *Rosenstein,* it was not immediately clear that the advertisements at issue were always the motivation for a consumer's purchase. In this case, however, it is fair to assume that most individuals who opened up credit card accounts after receiving the offer from MBNA did so because the advertisement, and specifically because of the low APR. MBNA's advertisement focuses on the APR. The APR is one of the few ways to distinguish between credit cards. Thus, the court finds that it is "logical" to presume reliance in this case, and therefore that common questions of law and fact predominate over individual ones in this case.

### B. *Are Spark's Claims "Typical" of Those of the Putative Class?*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." MBNA claims that Spark is subject to three defenses that prevent him from satisfying the typicality requirement. MBNA claims Spark is not typical because he admits he did not read the credit card agreement, because he cannot remember any details relating to this account, and because he has special knowledge and sophistication as a lawyer.

■ In considering the typicality requirement, the Third Circuit has explained that "[t]ypical is not identical, ... and even atypical elements of a claim may often be adequately treated by judicious severance or use of subclasses or other separate treatment of individual issues." *Eisenberg,* 766 F.2d at 786. The relevant inquiry is whether "'the named plaintiff's individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based.'" *Id.* (citations omitted). Courts will liberally construe the typicality requirement "as long as no express conflicts exist between the class representatives and the class." *Friedman v. Lansdale Parking Authority,* 1993 WL 338174 at *3 (E.D.Pa. Aug. 30, 1993).

■ As explained in the preceding section, most of the issues to be litigated in this case are common to all the proposed plaintiffs.

While the language of the credit card agreement may be relevant to these issues, Spark's failure to read the agreement is not. The consumer only sees the agreement once he or she responds to the original credit card offer, and thus whether Spark read it has no bearing on the claim that MBNA's advertisements misled him. Spark's failure to remember the details of his account also does not preclude him from satisfying the typicality requirement. MBNA claims that Spark will not be able to proceed because he does not specifically remember his decision to open the credit card account. However, this only relates to Spark's individual reliance on the advertisements, and the court has already concluded that the case should proceed under a presumption of reliance. Similarly, Spark's status as an attorney does not mean that his circumstances are "markedly different" than other plaintiffs, or that his legal theory will differ. Thus, the court concludes that Spark satisfies the typicality requirement.

### C. *Will Spark Adequately Represent the Proposed Class?*

■ Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." The adequacy of a representative depends on two factors: (1) the qualifications of the plaintiffs' attorney; and (2) the plaintiff must not have "interests antagonistic to those of the class." *Gunter v. Ridgewood Energy Corp.,* 164 F.R.D. 391, 396 (D.N.J.1996); *see also Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

■ MBNA does not challenge the ability of Spark's counsel to litigate this case. Instead, MBNA claims that Spark's close relationship with his counsel and counsel's agreement to advance the costs of litigation make him financially dependent upon them, and thus vulnerable to demands of counsel. MBNA also claims that Spark's implicit threat of litigation, in his letter to MBNA Bank, if his balance was not forgiven, calls into question Spark's ability to adequately and fairly represent the class.

Generally, "[c]hallenges which focus on a plaintiff's motives, knowledge or individual circumstances have largely been rejected by courts as irrelevant to the issue of adequacy." *Friedman*, 1993 WL 338174 at *5. The court notes that it is not unusual for a plaintiff's attorney to agree to advance the costs of litigation, and that this practice is often necessary for plaintiffs who could not otherwise afford to bring suit. Thus, the court finds that Spark is able to adequately represent the class.

## III. *CONCLUSION*

MBNA challenges Spark's motion for class certification on the grounds that three different requirements of Rule 23 of the Federal Rules of Civil Procedure are not satisfied in this case: that common questions predominate over individual ones, that the class representative's claims be typical of those of the class, and that the class representative be able to fairly and adequately represent the class. The court has concluded that all three of these requirements are satisfied in this case, and thus will grant Spark's motion to certify the class.

The court will issue an order in accordance with this memorandum opinion.