John D. SZABO, d/b/a Zatron, on behalf
of himself and all others similarly
situated, Plaintiff,

v.

BRIDGEPORT MACHINES,
INC., Defendant.

No. Civ. 1:00CV200.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 12, 2001.

Order denying reconsideration
March 1, 2001.

Neal Lewis, Neal Lewis and Associates, Orland, IN, Nicholas E. Chimicles, James R. Malone, Jr., Pamela N. Zetterberg, Chimicles and Tikellis LLP, Haverford, PA, Richard P. Myers, Paul Reich and Myers, Philadelphia, PA, for John D. Szabo dba Zatron, plaintiff.

Albert J. Dahm, Frederick B. Jonassen, Baker and Daniels, Fort Wayne, IN, Mark S. Baldwin, Brown, Rudnick, Freed & Gesmer, Hartford, CT, for Bridgeport Machines Inc., defendant.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on a motion for class certification filed by the plaintiff, John D. Szabo, d/b/a Zatron ("Szabo"), on August 16, 2000. The defendant, Bridgeport Machines, Inc. ("Bridgeport"), filed its response on September 22, 2000, to which Szabo replied on October 20, 2000. Also before the court is a motion to dismiss Count IV of Szabo's amended complaint, filed by Bridgeport on August 21, 2000. Szabo responded to the motion on September 15, 2000, to which Bridgeport replied on October 10, 2000.

On October 25, 2000, after a preliminary review of the motions, this court requested further briefing from the parties on the issue of choice of law. Szabo filed his supplemental brief on November 13, 2000, Bridgeport filed its response on December 4, 2000, and Szabo filed his reply on January 1, 2001.

For the following reasons, Szabo's motion for class certification will be granted and Bridgeport's motion to dismiss will be denied [1].

### Factual Background

The pertinent introductory facts of this case are as follows. Szabo, operating as Zatron (a machine shop), provides 3–D design services, CAD/CAM and CNC (computer numerically controlled) programming, the building of precision tool, dies and mold-tooling and production machining. Szabo resides in Indiana. Bridgeport, a Delaware corporation with its principal place of business in Connecticut, is in the business of manufacturing and distributing machine tools. Szabo's complaint arises out of his purchase in July 1997 of a Bridgeport 800/22 vertical machining center with a DX–32 Control Unit from Bridgeport. Szabo alleges that the machine did not perform up to and in accordance with certain technical specifications and performance characteristics alleg-edly contained in promotional material and an offer letter that Bridgeport's alleged agent, Advance Machinery Company, Inc. ("Advance Machinery"), purportedly gave to Szabo. According to Szabo, the Bridgeport Machine was unable to meet the technical specifications and performance characteristics due to defects inherent in the Bridgeport DX–32 Control Unit. Szabo alleges that Bridgeport had knowledge of these defects and that Bridgeport's brochure and written offer letter contained numerous fraudulent statements and omissions and that Bridgeport acted knowingly or recklessly in making these alleged false and misleading representations and omissions of fact. Szabo asserts claims of negligent misrepresentation, fraud and breach of warranties.

### Motion to Certify Class

Szabo seeks certification of a class of all persons [2] who purchased a machining center or a CNC milling machine from Bridgeport that included a Bridgeport DX–32 Control Unit between January 1, 1996 and the present (the "Class Period") and were damaged thereby (the "Class"). Excluded from the proposed class are Bridgeport and its respective officers, directors and employees. Szabo notes that the thrust of this action is that the DX–32 Control Unit incorporated into the machine he bought was inherently defective, which prevented the machine from operating in accordance with its specifications. Therefore, because the Class members all purchased computer numerically controlled machines with the same defective Control Unit, on the basis of standardized performance representations, Szabo argues that this action should be certified as a class action. Certification is sought under Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

Under Rule 23 of the Federal Rules of Civil Procedure, this court undertakes a two-step analysis in determining whether class certification is proper. *Hoffman v. Gros-*

---

1. On January 4, 2001, Szabo filed a motion to strike the Supplemental Affidavit of Andrew McNamara. As a result of the rulings set forth below, the court determines that the motion to strike is moot, at least with respect to the currently pending motions.

2. According to Szabo, the class definition is not intended to include persons or entities that do not reside within the United States.

*singer Motor Corp.*, 1999 WL 184179, *1 (N.D.Ill. March 29, 1999). First, the court determines whether the four threshold requirements of subsection (a) of Rule 23 have been met. These requirements are as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed.R.Civ.P. 23(a); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998). These four factors are often referred to as: "numerosity", "commonality", "typicality", and "adequate representation".

Secondly, the court determines whether the action qualifies for class treatment under at least one of the subdivisions of Rule 23(b). *Daniels v. Fed. Reserve Bank of Chicago*, 194 F.R.D. 609, 613 (N.D.Ill.2000) (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977)). Szabo is proceeding under Rule 23(b)(3), which provides in relevant part as follows:

> (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> \* \* \* \* \* \*

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3); *Frahm v. Equitable Life Assur. Soc. of United States*, 137 F.3d 955, 957 (7th Cir.1998). These two factors are commonly referred to as: "predominance" and "superiority".

■ Szabo bears the initial burden of advancing reasons why this action meets the requirements of Rule 23. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). In ruling on a motion for class certification the focus is simply on whether the prerequisites of Rule 23 have been met. The court does not conduct a hearing on the merits when deciding upon certification of a class. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Additionally, since the class determination is made at the pleading stage of the action, the substantive allegations in the complaint are accepted as true for purposes of the class motion. *In re Synthroid Marketing Litig.*, 188 F.R.D. 287, 290 (N.D.Ill.1999); *Jefferson v. Security Pacific Financial Svcs., Inc.*, 161 F.R.D. 63, 66 (N.D.Ill.1995). However, "ordinarily the determination should be predicated on more information than the pleadings will provide." *Simer v. Rios*, 661 F.2d 655, 689 (7th Cir. 1981) (quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir.1974)). Rule 23 is to be construed liberally. *Anschul v. Sitmar Cruises, Inc.*, 544 F.2d 1364, 1368 (7th Cir.1976).

*Numerosity*

The first requirement of Rule 23 is that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). This rule does not require that joinder be impossible, but impracticable. *Danis v. USN Commun., Inc.*, 189 F.R.D. 391, 399 (N.D.Ill.1999); *Joiner v. E & H Plastics Co.*, 1993 WL 565994, *3 (N.D.Ill. Oct. 1, 1993). Courts may make "common sense assumptions" in order to support the finding of numerosity. *Keele v. Wexler*, 1996 WL 124452, *3 (N.D.Ill. March 19, 1996), *aff'd* 149 F.3d 589 (7th Cir.1998).

■ Szabo estimates that hundreds of individuals fall within the parameters of the class definition. Szabo claims that members of the Class can be identified by reference to objective criteria such as Bridgeport's sales records which will reveal who purchased CNC milling machines or vertical machining centers that incorporated the DX–32 Control Unit. Szabo indicates that the proposed class consists of all persons, nationwide, who purchased these machines and that, although the exact number of jurisdictions in which the class members reside is not yet known, it

would be impracticable to join hundreds of class members from different states. Therefore, Szabo concludes that the numerosity requirement is satisfied.

■ Bridgeport, however, argues that Szabo has not met the numerosity requirement because he has not sufficiently put forth evidence of the number of the class members. Nevertheless, Bridgeport, which presumably knows the exact number of purchasers who would fit within the proposed class, has not attempted to make any showing that there are *not* hundreds of potential class members. Additionally, as Szabo points out in detail in his reply brief, Bridgeport's annual report clearly supports an estimate of domestic sales of machining centers in 1998 of over 600 machining centers. In any event, the law is clear that precise enumeration of the members of a class is not necessary for an action to proceed as a class action, and it is permissible to estimate class size. *Daniels v. Fed. Reserve Bank of Chicago,* 194 F.R.D. 609, 613 (N.D.Ill.2000); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993) ("[T]he moving party need not show the exact size of the proposed class to meet this requirement.") Consequently, the court finds that Szabo has met the numerosity requirement.

*Commonality, Predominance, Typicality*

■ The next issue is whether there are "questions of law or fact common to the class" and whether the commons questions predominate. Fed.R.Civ.P. 23(a)(2), (b)(3). This is not a demanding requirement. *Anderson v. Cornejo,* 199 F.Supp.2d 229, 240 (N.D.Ill.2000); *Warnell v. Ford Motor Co.,* 189 F.R.D. 383, 390 (N.D.Ill.1999). The rule does not require that all questions be common. *Noon v. Sailor,* 2000 WL 684274, *1 (S.D.Ind. March 14, 2000); *see generally* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure 2d,* § 1763 (1986). In fact, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2), at least in some circumstances. *Rendler v. Corus Bank, N.A.,* 2000 WL 347774, *2 (N.D.Ill.

March 30, 2000); *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 399 (N.D.Ill.1987).

■ A common question is one which "arises from 'a common nucleus of operative facts'" regardless of whether the underlying facts change over the class period and vary as to individual claimants. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (citations omitted); *see also Daley v. Provena Hospitals,* 193 F.R.D. 526, 528 (N.D.Ill.2000); *Davis v. Cash for Payday, Inc.,* 193 F.R.D. 518, 521 (N.D.Ill.2000).

Szabo claims that he has alleged a variety of common questions concerning the defects in the DX–32 Control Unit, Bridgeport's dealings with the members of the Class, and the Class members' potential remedies. (Am.Comp.¶ 81). Szabo further argues that the common questions of law and fact predominate over individual questions, making certification appropriate under Rule 23(b)(3).

Bridgeport, in response, argues that where, as here, the plaintiff moves for certification under Rule 23(b)(3), "Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 609, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Bridgeport claims that Szabo cannot meet the requirement that the common questions *predominate* because, according to Bridgeport, multiple individualized issues permeate both Szabo's particular claim and the class claims he alleges. The issue raised by Bridgeport will be discussed below, in connection with typicality. ("The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence." *General Tel. Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

■ A plaintiff's claim is typical if it arises from the same event or practice or

course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d at 597; *Rosario v. Livaditis,* 963 F.2d at 1018 (citing *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)); *Paper Systems, Inc. v. Mitsubishi Corp.,* 193 F.R.D. 601, 605 (E.D.Wis. 2000). The typicality requirement is satisfied when all plaintiffs have the same theory of recovery against the defendant based on the same set of facts. *Wollert v. Client Services, Inc.,* 2000 U.S.Dist. LEXIS 6485, *4 (N.D.Ill. March 24, 2000). For class certification purposes, "a named plaintiff need not have suffered precisely the same injury as every member of the class, so long as he has been adversely affected by the same practice or policy, therefore the court must focus on the nature of the class claims and whether they are 'fairly encompassed by the named plaintiff's claims.'" *Koski v. Gainer,* 1993 WL 153828, *2 (N.D.Ill. May 6, 1993) (citing *General Telephone Co. of the Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)).

Szabo argues that he is a typical victim of the defendant's practices and that his claims arise out of the same course of conduct and are based on the same legal theories as those of the putative Class members. Szabo notes that the gravamen of his claims is that the DX–32 Control Unit was defective. Szabo alleges that Bridgeport marketed its CNC machines equipped with the control unit as state-of-the-art and capable of certain performance specifications. (Am.Comp.¶¶ 1, 16–17, 27–29, 34–38, 43). Szabo also claims that Bridgeport was aware that the DX–32 Control Unit had numerous, severe defects. (Am.Comp.¶¶ 1, 26, 60–72, 97–98, 105). Szabo alleges in his complaint that the defects in the DX–32 were inherent, and therefore present in every CNC milling machine and vertical machining center that incorporated that unit. (Am.Comp.¶¶ 26, 60–71, 92). Allegedly, there were problems with acceleration and deceleration which were common to all machines equipped with the DX–32. (Am. Comp.¶¶ 68, 71). The complaint specifically alleges that many of the problems with the machine have been attributed to problems with the software, which is an inherent defect in the machine. (Am.Comp.¶¶ 48, 53, 56, 58–59, 69–71). Szabo also alleges that Bridgeport had knowledge of the defects in its products. (Am.Comp.¶¶ 1, 26, 60–71). The complaint describes numerous complaints by other purchasers of the DX–32 who experienced the same problems as Szabo with their machines. (Am.Comp.¶¶ 26, 55, 60–71). In light of all the above allegations, Szabo concludes that the common issues in this case are central to his claim and that by litigating the liability issues he can reasonably be expected to advance the interests of all putative Class members in a favorable determination on each common issue. *Weiss v. York Hospital,* 745 F.2d 786, 809–10 n. 36 (3rd Cir. 1984).

Bridgeport, in response, contends that Szabo's claim is inherently dependent upon his unique factual circumstances and, therefore, common factual issues do not predominate. Bridgeport relies on Szabo's deposition, wherein he indicated that numerous oral representations were made to him by Bridgeport's alleged agent (Advanced Machinery), as well as a demonstration of the product. Bridgeport then concludes that Szabo's claim is one based on oral misrepresentations, which oral misrepresentations would be different for each potential Class member, and, therefore, class certification is not permissible.

Clearly, Bridgeport is forgetting that this court must accept the substantive allegations of Szabo's complaint as true. *In re Synthroid Mktg. Litig.,* 188 F.R.D. 287, 290 (N.D.Ill.1999). While Bridgeport is free to argue during the merits phase of the case that Szabo cannot base his claim on written materials he received, such an argument has no place in response to a motion to certify class. In any event, the law is clear that the presence of some oral misrepresentations does not preclude class treatment. *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 188 (N.D.Ill.1992) ("simply because oral misrepresentations exist denial of class certification is not automatic."); *Riordan v. Smith Barney,* 113 F.R.D. 60, 63 (N.D.Ill. 1986) (mere fact that some oral misrepresen-

tations were made does not preclude certification).

Bridgeport also presents the argument that where class members have differing degrees of reliance on promotional materials, class issues do not predominate. *Martin v. Dahlberg,* 156 F.R.D. 207, 215–16 (N.D.Cal. 1994). Szabo, however, strongly contends that the existence of reliance issues does not preclude class certification. Szabo points out that he has alleged that the representations and performance specification in the contracts for sale were uniformly given to all class members. (Am.Comp.¶¶ 20, 32–38, 43, 47, 81, 86–88, 91, 96–99).

As Szabo points out there is an ample body of federal decisional law holding that reliance may be presumed where common representations are directed at class members. "When the fraud was perpetrated in a uniform manner against every member of the class, such as when all plaintiffs received virtually identical written materials from the defendants, courts typically hold that individual reliance questions do not predominate." *Rohlfing v. Manor Care, Inc.,* 172 F.R.D. 330, 338 (N.D.Ill.1997).[3] Likewise, in *Peterson v. H & R Block Tax Services, Inc.,* 174 F.R.D. 78 (N.D.Ill.1997), the court reached a similar conclusion regarding reliance in a class action challenging the defendant's Rapid Refund loan program. The court concluded that the only logical explanation for the class' behavior (paying a fee for the service) was that they relied on the written representations made to them regarding the program. *Id.* at 85. "[C]ourts will presume class members' reliance when it is logical to do so or when the complaint's allegations make reliance apparent." *Id.* at 84–85.

Similarly, in *Spark v. MBNA Corp.,* 178 F.R.D. 431 (D.Del.1998), the court certified a class action alleging that a bank violated RICO while making misleading statements in card advertisements. The bank argued that the claims of the class could only be supported by a finding that each class member relied on the disputed advertisement, and therefore individual issues predominated over common issues. The court held that courts can "presume reliance 'where it is logical to do so.'" 178 F.R.D. at 435 (quoting *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 188 (3rd Cir.1981)). Since it was "fair" to presume that the class members opened up accounts because they received advertisements, it was thus "logical" to presume reliance. 178 F.R.D. at 436.

Szabo reiterates the fact that the four causes of action asserted here are based on the uniform written representations. The available brochures discuss the DX–32 Control Unit in similar terms and Bridgeport used standardized form quotations for the sale of its machines. The Class purchased machines equipped with the Control Unit that, according to the standard form documents, had certain performance characteristics and specifications. Szabo argues that the contracts for purchase of the machines were "common documents," and the Class should be deemed to have relied on the representations (performance specifications and the like) made in the contracts. *Weiss v. Winner's Circle of Chicago, Inc.,* 1992 WL 220686, *2 (N.D.Ill. Sept. 3, 1992) (sales contract and accompanying documents established common core of documents, giving alleged scheme a standard set of operative facts by which to demonstrate reliance).[4] Szabo further maintains that it is "logical" to presume that because the Class members contracted for, paid for and received the machines, they relied on the uniform written representations made in connection with the sale. Szabo concludes that Bridgeport's use of uniform and standardized written documents obviates the need to demonstrate reliance on an individual basis and, therefore, reliance can be established on a class-wide basis and common issue predominate.

Bridgeport also claims that "agency" issues preclude class treatment. Bridgeport

---

**3.** *See also Garner v. Healy,* 184 F.R.D. at 602; *Krause v. GE Capital Mortage Svcs., Inc.,* 1998 WL 831896, *5 (N.D.Ill. Nov. 20, 1998); *Heastie v. Community Bank,* 125 F.R.D. 669, 676 (N.D.Ill.1989).

**4.** Notably, the fact that the potential purchasers were subject to individualized oral solicitations did not alter the conclusion that common questions predominated. 1992 U.S.Dist LEXIS 13288 at *7–8.

contests the allegation that its distributors were its agents, and contends that this issue creates obstacles to class treatment. Bridgeport claims that its distributors were not agents because its form of distributor agreement contains language indicating that it is not intended to create an agency relationship. Szabo, however, points out that the agency issue is a peripheral one because any sale made by a distributor are "subject to approval and acceptance by Bridgeport at its office located in Bridgeport Connecticut." [5] Bridgeport was to supply the sales literature, and was to retain control over the use of its trade name. Bridgeport also supplied the distributors with standardized agreements for use in the sale of its products. In light of these alleged facts, Szabo claims that even if the distributors were acting outside the scope of their authority in promoting Bridgeport's products with the literature it supplied and selling them pursuant to contractual terms that it provided, Bridgeport ratified the sales to class members. Szabo further claims that, in ratifying the sales, Bridgeport approved contracts that repeated the specifications contained in its sales brochures. Finally, Szabo points out that even though Bridgeport contends that the agency issue will require the consideration of the law of various different states, the contract it invokes contains a choice of law provision, making Connecticut law applicable.

■■■ This court agrees with Szabo that reliance and agency issues do not preclude class certification as they do not defeat the commonality, predominance and typicality requirements. Additionally, with respect to the typicality requirement, it is clear that (contrary to Bridgeport's arguments) the fact that Szabo seeks to represent class members who purchased different models of Bridgeport's machines that incorporated the DX–32 Control Unit does not render him atypical. Typicality is satisfied even where there are factual differences between the claims of the named plaintiff and the claims of class members. *See De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). In *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. at 185–86, 188, the district court

rejected an argument that a securities class action could not properly be certified because the class members had invested at different times and in different entities. Similarly, in *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56–57 (S.D.N.Y.1993), the district court rejected the contention that class plaintiffs in a case involving limited partnerships could only represent limited partners in partnerships in which they had invested. The *Maywalt* court recognized that the common course of conduct by the defendant made the named plaintiffs typical of investors in all of the affected limited partnerships. *Id.*

Szabo further points out that Bridgeport has exaggerated the differences among the various types of machines that are the subject of this action. According to Szabo, each of the machines performed the same basic function, cutting metal, and each contained the same computer control unit that the plaintiff asserts was inherently defective. The VMC 760 and VMC 800 are the same basic machine. Likewise the VMC 800 and VMC 1000 are substantially similar, were promoted in the same brochure, and shared a number of common specifications, with the principal difference being the length of the cutting stroke in the X axis. (Am.Comp. ¶¶ 62–72).

In conclusion, the court finds that Szabo has met Rule 23's requirements with respect to commonality, predominance, and typicality.

*Adequate Representation*

■■■ The adequacy of representation requirement of Rule 23(a)(4) consists of two parts: (1) the adequacy of the named plaintiff's counsel and (2) the adequacy of representation provided in protecting the different, separate and distinct interest of the class members. *Retired Chicago Police Ass'n,* 7 F.3d at 598; *Rosario v. Livaditis*, 963 F.2d at 1018. The requirement is met if it appears that the plaintiff's interests are not antagonistic to those of other members of the class he or she seeks to represent, that the representative has a sufficient interest in the outcome to ensure vigorous advocacy, and

**5.** McNamara Aff.Exh. F at 2.

the plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. *Davis v. Cash for Payday, Inc.*, 193 F.R.D. at 522; *Anderson v. Cornejo*, 199 F.Supp.2d at 240–41; *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986).

Bridgeport does not take issue with the qualifications of Szabo's counsel to adequately represent the class. However, Bridgeport claims that Szabo's interests (doing 3D mold work) are incompatible with other Bridgeport machine owners who were not using their machines for the same type of work as the plaintiff. Clearly, however, as the underlying claim is that the allegedly defective DX–32 Control Unit caused the machines at issue to not meet their specifications, whether Szabo intended to perform the exact type of work with his machine as other potential plaintiffs is totally immaterial.

Bridgeport further argues that there are several issues regarding the plaintiff's credibility and suitability as a class representative with respect to his ability to fulfill his fiduciary duties to the class that have become apparent in light of his deposition testimony. Bridgeport claims that Szabo openly admitted that he downloaded an image of Bridgeport's machine from Bridgeport's website and used it on his own promotional business materials without Bridgeport's permission, in violation of copyright law. In response, Szabo points out that nothing in the record shows that the relevant photograph was copyrighted by appropriate registration or that he acted improperly. Additionally, Szabo furnished Bridgeport's representatives with business cards and brochures that had the photograph on them over two years ago and never received any comments about copyright issues.

Bridgeport also claims that Szabo has made representations to his customers regarding his business' capabilities, using the Bridgeport VMC 800, that are entirely inconsistent with the claims he now asserts against Bridgeport. For example, Szabo claims in a sales letter that he, using his VMC 800 machine, "3D machined numerous gauging, fixturing and mold projects with a high degree of accuracy and excellent surface finishes coming directly off the machine." In response, Szabo claims that Bridgeport is taking his promotional statements out of context, and further notes that the statements come from a period when Szabo was cooperating with Bridgeport's numerous attempts to make his machine work. As detailed in his responses to interrogatories, those efforts continued over two years, and included the installation of an experimental part to replace the BMDC–3 card that had been one of the standard components when the machine was sold to him.[6]

◾ For a court to deny class certification based on a conflict with the potential class members, there must be real and substantial conflict, not merely a speculative or conjectural one, and it must go to the subject matter of the controversy. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697–98 (7th Cir.1986). It is abundantly clear that none of Bridgeport's arguments meet this standard. As Szabo points out, even if his promotional statements were inconsistent with the allegations in this case, this does not create a conflict *with the class*. *See Rosario*, 963 F.2d at 1018–19 (rejecting contention that typicality and adequacy requirements were not met based upon contention that some class members were "satisfied" with educational services challenged as fraudulent).

Therefore, as Szabo's counsel is qualified to adequately represent the class and Szabo's interests are not antagonistic to those of other class members, the court finds Rule 23's "adequate representation" requirement to have been met.

*Superiority*

◾ Rule 23(b)(3) requires the consideration of the following factors in determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy": (1) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature

6. *See* Reply Decl., Ex. 23 at 12–19, 41–48.

of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Taylor v. Halsted Financial Svcs., LLC*, 2000 WL 33201925, *12, 2000 U.S.Dist. LEXIS 384, *39 (N.D.Ill. Jan. 4, 2000); *Hoffman v. Grossinger Motor Corp.*, 1999 WL 184179, *2–3. As Szabo notes, it has been widely recognized that a class action is superior to other available methods for the fair and efficient adjudication of a suit that affects a large number of persons injured by violations of a common law. *See Paper Sys., Inc. v. Mitsubishi*, 193 F.R.D. at 606 (class action superior where repeatedly litigating the same issues in individual suits would consume more judicial resources than addressing them in a single blow in consolidated actions).

Szabo argues that Bridgeport has inflicted economic injury on a large number of geographically dispersed persons to such an extent that the cost of pursuing individual litigation to seek recovery against a well-financed adversary is not feasible and, thus, the alternatives to a class action are either no recourse for hundreds of small businesses, or a multiplicity of scattered suits resulting in the inefficient administration of litigation. Szabo further argues that, given the complex nature of the technology at issue and the need for extensive experts, the cost of pursuing individual claims by Class members could effectively preclude their ability to recover.

Bridgeport, however, argues that there is no need for class certification because the potential class members are business people who have spent over $70,000 for a machine. Bridgeport hypothesizes that any such class member would likely be capable of protecting his own rights. However, this approach was explicitly rejected in *Scholes v. Stone, McGuire & Benjamin, supra.* In *Scholes*, even though the named plaintiff had a claim in excess of $300,000, the district court rejected the same superiority argument proffered here, noting that a class action would provide benefits to investors with claims of less than $50,000 and that judicial economy, efficiency and consistent results would all be promoted by class certification. 143 F.R.D. at 188–89.

Szabo asserts that this is a complex case, and that developing the evidence of defect and presenting it in a way that a jury can comprehend will require significant time and effort. Szabo also informs the court that the possibility of pursuing the case on an individual basis was initially considered by counsel and rejected because of the complex subject matter. Szabo further points out that to the extent that a member of the proposed class has a claim that it wishes to pursue individually, it will remain free to do so by opting out. Fed.R.Civ.P. 23(c)(2). Similarly, class members will be given the option of entering an appearance through counsel should they wish to do so. *Id.* The court finds that Szabo has the better argument on this point and holds that the mere fact that the machines at issue cost approximately $70,000 does not preclude class certification.

Bridgeport has also claimed that differing state laws militate against a finding of superiority. The court will discuss the issue of choice of law below.

### Choice of Law

Two standards must be met in determining choice of law. First, the choice of law analysis must comport with the requirements of due process. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307–08, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Second, the choice of law analysis must be consistent with the choice of law principles of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Coldwell Banker & Co. v. Karlock*, 686 F.2d 596, 600 (7th Cir.1982).

The parties agree that Indiana's choice of law rules are to be used to determine what law applies to the proposed class' claims. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 581 (7th Cir.1994). The application of choice of law principles will vary slightly for the different claims raised in the amended complaint. The warranty claims are contrac-

tual, while the remaining claims (negligent misrepresentation and fraud) are based upon tort theories. The parties agree that Indiana's choice of law rules for torts is addressed in *Hubbard Manufacturing Co., Inc. v. Greeson,* 515 N.E.2d 1071, 1073–74 (Ind.1987). In *Hubbard,* the Indiana Supreme Court abandoned the principal of *lex loci delicti,* and adopted an approach that requires an assessment of which jurisdiction has the most significant relationship with the particular tort. *Id.* This shift was undertaken because the historical focus upon the place where the last act occurred that gave rise to liability often produced anomalous results if the tortious conduct occurred in one state while the harm occurred in another. *Castelli v. Steele,* 700 F.Supp. 449, 452 (N.D.Ind. 1988). Under *Hubbard,* the place where the harm occurred will frequently have the most significant relationship with the dispute, but other factors are to be considered when the place where the harm occurred is an insignificant contact. *Hubbard,* 515 N.E.2d at 1073–74.

Szabo argues that the law of Connecticut is the most appropriate source of substantive law whereas, of course, Indiana law would still govern matters of procedure. With respect to the tort claim of negligent misrepresentation, there are significant differences between Indiana and Connecticut law. The Connecticut Supreme Court has "long recognized liability for negligent misrepresentation...." *Citino v. Redevelopment Agency,* 51 Conn.App. 262, 721 A.2d 1197, 1206 (1998). Indiana, however, does not recognize negligent misrepresentation, except in limited circumstances focused on the area of employment. *Darst v. Illinois Farmers Ins. Co.,* 716 N.E.2d 579, 584 (Ind.App.1999).

Returning to a *Hubbard* analysis, the court must determine whether the place of the tort, Indiana, has a significant connection to the action and, if not, which state has the most significant relationship to this case. As recognized in *Hubbard,* the place where the

harm occurred will frequently have the most significant relationship with the dispute, but other factors are to be considered when the place where the harm occurred is an insignificant contact. 515 N.E.2d at 1073–74. *Hubbard* endorsed factors set forth in the Second Restatement, which provides in relevant part as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[7]
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties are centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 245. *See Hubbard Manufacturing v. Greeson,* 515 N.E.2d at 1073–74.

Indiana's contacts are that the injury occurred in Indiana, Szabo's residence is in Indiana, and the lawsuit was filed in Indiana. Szabo argues that Connecticut's contacts are directly related to the wrongful acts alleged and are therefore more significant:

1. The machine Szabo bought was assembled and the defective control unit was incorporated into it in Connecticut.

2. The decision to sell inherently defective machines was made in Connecticut.

---

7. Section 6 of the Restatement directs courts to consider a variety of factors, including (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

3. The brochure Szabo reviewed that incorporated the specifications and other misleading statements about the machine he purchased came from Connecticut.

4. The form contract· that documented Szabo's purchase and incorporated the misleading specifications for the machine was prepared in Connecticut, where Bridgeport apparently maintained a computer bulletin board with form contracts for use of its dealers.

5. The decision to use these misleading documents in connection with the sale of the machinery was made in Connecticut.

6. The proposed sale of the machine arranged by the local dealer was approved by Bridgeport in Connecticut, which is when Szabo's relationship with the defendant was formally established.

7. Since the contract was "F.O.B. Bridgeport, Connecticut," title to the machine passed to Szabo in Connecticut.

Bridgeport, however, disagrees with Szabo that Indiana's contacts are insignificant. Bridgeport goes so far as to argue that if the state in which the last event giving rise to liability also has other contacts with the suit, and the suit was filed in that state, that state's law should apply. Bridgeport cites to *Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F.Supp.2d 869 (N.D.Ind.1999), in support of its assertion. In *Paper Mfrs.*, Judge Sharp of this Court stated:

A modified version of the "significant relationship test" was adopted by the Indiana Supreme Court in *Hubbard*, in the context of determining whether to apply Indiana or Illinois product liability law. *Hubbard Mfg.*, 515 N.E.2d 1071, 1073. Indiana's choice of law rules dictate that when an action arises in tort the trial court must first ask where the last event necessary to give rise to liability occurred. *American Family [v. Williams]*, 839 F.Supp. 579 [(S.D.Ind.1993)]. This is the traditional *lex loci delicti commissi* rule. *Big Rivers Elec. Corp. v. General Elec. Co.*, 820 F.Supp. 1123 (S.D.Ind.1992). Secondly, the court must ask whether the

place of the last event bears any connection to the legal action, and if the place of the last event has sufficient connection to the legal action, that state's law applies and the inquiry is concluded. *American Family*, 839 F.Supp. at 582; *Cox by Zick v. Nichols*, 690 N.E.2d 750 (Ind.Ct.App. 1998), *reh'g denied. See Kamel v. Hill–Rom Co., Inc.*, 108 F.3d 799 (7th Cir.1997); *Giffin v. Summerlin*, 78 F.3d 1227, 1230 n. 3 (7th Cir.1996). However, if the place of the last event does not have sufficient connection, the court moves to the third step and considers the place where the conduct causing the injury occurred, the residence or place of business of the parties, and the place where the relationship is centered. *Big Rivers*, 820 F.Supp. at 1125; *Jean v. Dugan*, 814 F.Supp. 1401 (N.D.Ind.1993), *aff'd* 20 F.3d 255 (7th Cir.1994).

60 F.Supp.2d at 875.

Clearly, *Paper Mfrs.* cannot be read as broadly as Bridgeport would like. It is not enough that Indiana has some connection with the action, it must have *sufficient connection.* As the Indiana Appellate Court stated in *KPMG Peat Marwick v. Asher*, 689 N.E.2d 1283 (Ind.App.1998):

Peat Marwick insists that the trial court erred when it found that "nearly 600 farmers conducting business at Indiana grain elevators in alleged reliance upon the existence of a USDA license posted on the wall constituted insignificant contacts with Indiana." Appellant's Brief at 12. This argument improperly focuses on a quantitative view of state contacts which in a class action would dictate a result based upon the number of plaintiffs. Here, the farmers alleged accounting negligence on the part of Peat Marwick. Specifically, they claim Peat Marwick failed to adequately audit MGI's financial statements. Designated evidence indicated the audit was prepared by Peat Marwick in Missouri, for a client whose principal place of business was Missouri, which office then relicensed MGI. The presence of these facts in an action for accountant negligence render insignificant, in a choice-of-law

analysis, the Indiana nature of the farmers' contacts.

689 N.E.2d at 1287.

The court notes that *Asher*, as an Indiana intermediate appellate court decision, is to be granted substantial weight. "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise," *West v. American Tel. & Tel. Co.*, 311 U.S. at 237, 61 S.Ct. 179 (citations omitted); *See also Malone v. Bankhead Enterprises, Inc.*, 125 F.3d 535, 539 (7th Cir.1997) (describing decisions of intermediate state appeals courts as "perhaps the best indication" of how state supreme court would rule); *Echo Inc. v. Whitson Co. Inc.*, 121 F.3d 1099, 1102 n. 1 (7th Cir.1997) (federal courts may not disregard decision of intermediate state appellate court absent persuasive basis to conclude state supreme court would rule differently).[8] Additionally, to the extent that *Paper Mfrs.* is in conflict with *Asher*, it is a false conflict. After noting that Pennsylvania law arguably would apply, the court noted that "the plaintiff concedes ... that the laws of Pennsylvania and Indiana are similar and produce similar results." *Id.* at 875 n. 4. Significantly, there was no argument that the law of the defendant's domicile should be applied. *Id.* at 873 n. 3.

While it is true that Szabo is an Indiana resident and the machine he purchased is located in Indiana, the court finds these to be insignificant contacts with respect to the current action. Szabo's allegations against Bridgeport concentrate on Bridgeport's action and representations made in Connecticut. Therefore, Indiana's contacts are of inconsequential significance.

Bridgeport also argues that Connecticut's contacts are insignificant, and claims that "[i]n his desperate attempt to focus this

Court's inquiry on the State of Connecticut, plaintiff has made a number of erroneous factual statements or assumptions." Bridgeport's Memorandum of Law Regarding Choice of Law, at 10. For example, Bridgeport disputes that Szabo had a relationship with Bridgeport, and argues that all of Szabo's discussions regarding his purchase of the machine took place in Indiana and that his purchase contract was also prepared in Indiana.

In response, Szabo reiterates the principle that, in ruling on a class certification, the question is "whether plaintiff is asserting a claim which, *assuming its merit*, will satisfy the requirements of Rule 23...." *Eggleston v. Chicago Journeymen Plumbers' Local No. 130*, 657 F.2d 890, 895 (7th Cir.1981) (emphasis added). Szabo argues that Bridgeport is not permitted, at this stage, to contest the validity of his theory that the local dealer with whom he dealt was Bridgeport's agent. Szabo has also supplemented the allegations of his complaint with documents produced in discovery that show that Bridgeport maintained standardized form contracts on a computerized bulletin board for the use of its dealers, and that the terms of those standardized contracts match the terms of the contract for sale that Szabo received. Szabo has also relied upon Bridgeport's agreement with its local dealer to support his contention that the contract which he signed for the purchase was approved by the defendant in Bridgeport, Connecticut.

Szabo further relies upon these materials to demonstrate that Bridgeport drafted the terms of the contract that documented Szabo's purchase of his machinery center. Szabo points out that this document, along with the brochure he received, form the basis of his claims for fraud, negligent misrepresentation and breach of warranty. Additionally, with respect to oral statements made to Szabo by representatives of Advance Machinery, Szabo notes that nothing in the record indicates that the oral statements made to him did anything more than reinforce the state-

---

**8.** The Supreme Court of Indiana denied a request for transfer in *Asher*. *KPMG Peat Marwick v. Asher*, 706 N.E.2d 166 (Ind.1998). While this disposition does not necessarily reflect the Supreme Court's agreement with the reasoning or the result of *Asher*, Indiana case law suggests that this court "may ascribe some meaning to the denial of transfer." *Roberts v. State*, 725 N.E.2d 441, 446 (Ind.App.2000), *transfer denied*, 735 N.E.2d 234 (Ind.2000).

ments made in the promotional brochure concerning the specifications for the machine, and similar statements in the quotation that ultimately served as the documentation for Szabo's purchase.

This court agrees with Szabo that Bridgeport has inappropriately attempted to litigate the merits of Szabo's claims. As Szabo has shown that Indiana does not have significant contacts with the cause of action, and Connecticut does have significant contacts, the law of Connecticut will be applied to Szabo's negligent misrepresentation and fraud claims.

With respect to the warranty claims, this court agrees with Szabo that under Indiana choice of law principles for contract actions, Connecticut law should apply to both the express and implied warranty claims. Indiana's choice of law rule for contract actions directs that the court should apply the substantive law of the state with "the most intimate contact to the facts." *Travelers Indem. Co. v. Summit Corporation of America*, 715 N.E.2d 926, 931 (Ind.App.1999). Clearly, Connecticut is the state with the "most intimate contacts" to the warranty claims.

Szabo claims that he was injured because the DX–32 Control Unit incorporated into his machining center is defective. The shipment of the defective machining center is the conduct that caused Bridgeport to breach its express and implied warranties. The brochures and sales contract containing the specifications that form the basis of the express warranty claim came from Connecticut. Bridgeport is based in Connecticut, which is where the machine was shipped from and where the decision to sell under the faulty specifications was made. Finally, the contract that Szabo signed was F.O.B. Bridgeport Connecticut, which means that title to the machine and risk of loss passed to him at that location, not in Indiana.

In sum, the court finds that Connecticut law applies to the claims in this cause of action. As the substantive law of a single state is applicable to all of the claims with respect to Szabo and all putative class members, Bridgeport's argument that the case is unmanageable as a class action fails. The court finds that Szabo has shown that all of

Rule 23's requirements have been met. Accordingly, the court will grant Szabo's motion to certify a class.

### Motion to Dismiss

Bridgeport has filed its motion to dismiss pursuant to Rule 12(b)(6) asserting that, with respect to Count IV (a claim of fraud), Szabo has failed to state a claim for which relief can be granted. More specifically, Bridgeport asserts that Szabo has failed to state the elements of a *prima facie* case of fraudulent misrepresentation because he has failed to allege any nexus between the alleged misrepresentations Bridgeport made to him and Bridgeport's alleged knowledge of performance problems with other machines.

In deciding a Rule 12(b)(6) motion to dismiss, this court "accept[s] as true all well-plead factual allegations in the complaint and draw[s] all reasonable inferences therefrom in favor of the [non-moving party] plaintiff." *Perkins v. Silverstein*, 939 F.2d 463, 465 (7th Cir.1991); *see also Lincoln Nat'l Life Ins. Co. v. Donaldson, Lufkin & Jenrette*, 9 F.Supp.2d 994 (N.D.Ind.1998). The court may, without transforming a motion under Rule 12(b)(6) into a Rule 56 motion, consider documents not attached to the Complaint which are nevertheless central to the plaintiff's Complaint and referred to in the Complaint. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir.1994).

On July 10, 2000, this court granted Bridgeport's motion to dismiss Count IV of Szabo's complaint. On July 24, 2000, Szabo filed an amended complaint. With these amendments, Szabo sought to address this court's holding that (1) Szabo did not allege that Bridgeport had knowledge that specific representations it made to Szabo regarding the equipment he purchased were false, and (2) that Szabo did not sufficiently allege omissions by Bridgeport constituting actionable fraud. Bridgeport, in its present motion, argues that Szabo has still failed to allege the *prima facie* elements of fraud.

In support of its motion to dismiss, Bridgeport first contends that Szabo has not properly alleged that Bridgeport had knowledge that the specific representations it

made to Szabo with respect to the specific equipment Szabo purchased were false. Szabo, however, argues that he has specifically alleged that Bridgeport had knowledge of the defects in the DX–32 Control Unit (which was installed on various Bridgeport machines) long before Szabo purchased his machine. For example, the Amended Complaint states:

60. At the time when Zatron purchased the VMC 800 with the DX–32 Control Unit, the Company [Bridgeport] was well aware of the defective condition of the DX–32 Control Unit. Well in advance of the time when plaintiff purchased his VMC–800, Bridgeport had received a number of communications from customers and from distributors which reported impaired performance for the VMC 760, when fitted with the DX–32 Control Unit, indicating that the control unit was inherently defective. The VMC 760, when fitted with the DX–32 Control Unit, suffered from problems handling acceleration and deceleration, causing the machine to bump and shudder and creating dwell marks where the tool head rested in one place for too long.

61. These communications were more than sufficient to put Bridgeport on notice of the inherent defects in the DX–32 Control Unit, particularly since the VMC 760 shared many of the same performance specifications for stroke, rapid traverse rate, maximum feed rate, spindle speed, positioning accuracy, machine accuracy and repeatability as the VMC 800 and VMC 1000 machines.

\* \* \* \* \* \*

66. In addition to these communications outlined above, Bridgeport received written reports of all service calls made by its distributors, and the reports contained product defect codes designed to permit the Company to track problems experienced with its machines in the field. This is demonstrated by the fact that Bridgeport has produced with its initial disclosures copies of reports of the service calls

made at Zatron's premises to service plaintiff's VMC 800.

In response to these allegations, Bridgeport reiterates its argument that Szabo's allegations regarding problems with the VMC 760 that preceded plaintiff's purchase are irrelevant because Szabo purchased the VMC 800 and not the VMC 760.

As Szabo points out, however, he has alleged that the VMC 760, VMC 800, and VMC 1000 all incorporate the same defective DX–32 Control Unit and that it is defects in the Control Unit that triggered this action, not the type of machine that was purchased. Szabo also claims that recent discovery has bolstered his claims and, if necessary, the complaint could be amended to add these allegations. Szabo points out that a Bridgeport Service Bulletin from November 1997 indicates that the DX–32 software installed on the VMC and Torq–Cut machining centers is the same. Szabo further claims that Bridgeport's argument is substantially undercut by its own documents, which show that the VMC 800 that the plaintiff bought is the same model as the VMC 760.[9] In reply, Bridgeport states that even if the VMC 760 was "substantially similar" to the VMC 800 and Bridgeport was aware of problems with the VMC 760 (and the DX–32 Control Unit), such allegations still fail to support a claim of fraud. Notably, Bridgeport has not cited any cases in support of this statement.

While factual issues may still exist as to whether the VMC 760 and the VMC 800 are the same machine or even substantially similar machines, this court finds that dismissal for failure to state a claim is not appropriate. Szabo has alleged that Bridgeport had knowledge that its representations as to the performance of its machines utilizing the DX–32 Control Unit were false, and that the machines with known problems were essentially the same as the machine Szabo ultimately purchased. These allegations sufficiently permit Szabo to defeat a motion to dismiss.

9. Exhibit 2 at B000085 states "The specifications of the new VMC 800 have not changed from the familiar VMC 760 machine .... the nomenclature has been updated to reflect the 31.5 inches of 'x' travel which converts to 800mm."

Bridgeport also asserts that Szabo failed to make any claims that Bridgeport made material representations regarding acceleration and deceleration or dwell marks. Szabo, however, argues that Bridgeport stated that machinery equipped with the DX–32 Control Unit could perform at certain specified speeds, and further stated that the Control Unit was capable of processing 500 program blocks per second. Thus, according to Szabo, Bridgeport has essentially made material misrepresentations regarding the acceleration and deceleration capabilities of the Control Unit. Szabo also points out that he has challenged the representation that the Control Unit was "proven", and acceleration and deceleration are central to the function of a CNC control unit. Szabo argues that, at the least, in light of the representations that Bridgeport made about the performance of its product and its "proven" Control Unit, Bridgeport was under a duty to reveal the problems that the DX–32 Control Unit had with acceleration and deceleration calculations.

 Under Connecticut law, it is "fundamental" that a person who speaks has a duty to disclose enough to prevent his words from being misleading. *Baskin v. Hawley,* 807 F.2d 1120, 1132 (2d Cir.1986). "A statement disclosing favorable information but omitting all references to material unfavorable facts breaches that duty." *Id. See also* Restatement (Second) of Torts § 529 & Comments a, b (1977); Prosser & Keeton, *Law of Torts* § 106 at 738 (5th ed.1984). An innocent misrepresentation may be actionable if the declarant has the duty of knowing the truth. *Omega Engineering, Inc. v. Eastman Kodak Co.,* 908 F.Supp. 1084, 1095 (D.Conn. 1995). This court agrees with Szabo that the allegations in the amended complaint demonstrate that Bridgeport was aware of the problems (which affected acceleration and deceleration) with the DX–32 Control Unit before Szabo purchased the VMC 800, and that there is a nexus between the acceleration and deceleration problems and the representations Bridgeport made about the performance of machines equipped with the Control Unit.

 Bridgeport next argues that Szabo has failed to sufficiently allege reasonable reliance. The amended complaint states:

> 106. Plaintiff Zatron and the members of the Class reasonably relied to their detriment on the aforementioned representations and omissions of fact by Bridgeport and were fraudulently induced to purchase their CNC milling machines and machining centers based upon the aforementioned representations and omissions of fact by Bridgeport.

"Reasonable reliance is primarily a fact question as to (1) what the plaintiffs believed, and (2) the circumstances surrounding the misrepresentation made by the [defendant]." *Foy v. Pratt & Whitney Group,* 127 F.3d 229, 235 (2nd Cir.1997). Bridgeport has raised questions of fact with respect to whether Szabo reasonably relied upon its representations. Bridgeport claims that Szabo was a "savvy businessman" and that he had carefully researched the VMC 800 prior to purchase. While it may be that Szabo will not ultimately be able to *prove* reasonable reliance, there can be no real dispute that he has sufficiently *alleged* this element of his fraud claim. *See* Amended Complaint at ¶ 106, *supra.*

Accordingly, as Szabo has alleged with sufficient particularity the requisite elements of a fraud claim, Bridgeport's motion to dismiss will be denied.

### Conclusion

On the basis of the foregoing, Szabo's Motion to Certify Class is hereby GRANTED. Further, Bridgeport's Motion to Dismiss Count IV is hereby DENIED.

### ORDER

This matter is before the court on a motion to reconsider filed by the defendant, Bridgeport Machines, Inc. ("Bridgeport"), on January 29, 2001. The plaintiff, John D. Szabo, d/b/a Zatron ("Szabo"), filed his response to the motion on February 7, 2001, to which Bridgeport replied on February 20, 2001. Also before the court is a motion to strike the Second Supplemental Affidavit of Andrew McNamara, filed by Szabo on February 9, 2001. Bridgeport filed its objection to the

motion to strike on February 23, 2001, to which Szabo replied on February 28, 2001.

For the following reasons, the motion to reconsider will be denied and the motion to strike will be deemed moot.

### Discussion

On January 12, 2001, after extensive briefing by the parties, this court granted Szabo's motion for class certification. Bridgeport, without any discussion of the standard by which motions to reconsider are governed, has requested that the court reconsider its order of January 12, 2001.

 "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996)(citing *In Re Oil Spill*, 794 F.Supp. 261, 267 (N.D.Ill. 1992)). The Seventh Circuit Court of Appeals has, in no uncertain terms, described a motion to reconsider frivolous if it contains no new evidence or arguments of law explaining why the judge should change the original order. *See Magnus Electronics, Inc. v. Masco Corp. of Indiana*, 871 F.2d 626, 629 (7th Cir.1989); *Brown v. National Bd. of Medical Examiners*, 800 F.2d 168, 173 (7th Cir.1986). "Motions for reconsideration generally serve a very narrow function and must be supported by a showing of extraordinary circumstances justifying relief from judgment." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 684 (7th Cir.1998); *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 400 (7th Cir.1986). The rulings of a district court are not to be viewed "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988); *Amp–Rite Electric Company, Inc. v. International Brotherhood of Electrical Workers*, 2000 WL 1368038 (N.D.Ill. Sept.14, 2000). Additionally, the Seventh Circuit has repeatedly stated that "motions for reconsideration are designed to correct manifest errors of law or fact or to present newly discovered evidence." *Roth-*

*well Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.1987); *see also Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985).

 The court will first discuss Bridgeport's contention that this court should have conducted an evidentiary hearing on the motion for class certification. This contention comes as quite a surprise considering that Bridgeport failed to request such a hearing in the nearly six month period during which Szabo's motion was pending. The Local Rules of this court clearly state:

> A request for an evidentiary hearing on a motion or petition may be made by any party after a motion or petition has been filed. The request for hearing shall set forth specifically the purpose of the hearing and an estimate of the time reasonably required for the court to devote to the hearing.

N.D. Ind. R. 7.5 Compliance with the local rules of this court is not optional. *Grassi v. Information Resources, Inc.,* 63 F.3d 596, 602 (7th Cir.1995). Additionally, Bridgeport fails to take into account this court's broad discretion in addressing class certification issues under Rule 23 of the Federal Rules of Civil Procedure (which Rule does *not* include any provision for an evidentiary hearing). The Seventh Circuit has routinely held that it is within the district court's discretion to hold a hearing or not, depending on the district court's evaluation of the motion to certify. "In certain circumstances, an evidentiary hearing may be necessary for full evaluation of the class issue. But we do not believe that an absolute rule is necessary to insure full explication of the class issue...." *Simer v. Rios*, 661 F.2d 655, 671 (7th Cir.1981). As will be discussed more fully below, this court found that a full evaluation of the class issue was attainable solely on the basis of the evidentiary record before the court.

The basic thrust of Bridgeport's motion to reconsider is its insistence that the proposed class does not meet Rule 23's requirements and that in finding that the proposed class does meet Rule 23's requirements this court improperly accepted Szabo's complaint as true. While the court will not engage in a

blow-by-blow rehash of Bridgeport's prior arguments, the court will address a few of the points raised by Bridgeport for the sole purpose of easing the confusion which apparently exists in the mind of Bridgeport's counsel.

Szabo, who purchased a machining center from Bridgeport, seeks to represent the class of all persons who purchased a machining center or a CNC milling machine from Bridgeport that included a Bridgeport DX–32 Control Unit between January 1, 1996 and the present and were damaged thereby. Szabo's premise is that because the Class members all purchased computer numerically controlled machines with the same defective Control Unit, on the basis of standardized performance representations, a class action is appropriate. Quoting from this court's order of January 12, 2001, the standard of analysis for Rule 23 motions is as follows:

Under Rule 23 of the Federal Rules of Civil Procedure, this court undertakes a two-step analysis in determining whether class certification is proper. *Hoffman v. Grossinger Motor Corp.*, 1999 WL 184179, *2 (N.D.Ill. March 29, 1999). First, the court determines whether the four threshold requirements of subsection (a) of Rule 23 have been met. These requirements are as follows:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed.R.Civ.P. 23(a); *see also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998). These four factors are often referred to as: "numerosity", "commonality", "typicality", and "adequate representation".

Secondly, the court determines whether the action qualifies for class treatment under at least one of the subdivisions of Rule 23(b). *Daniels v. Fed. Reserve Bank of Chicago*, 194 F.R.D. 609, 613

(N.D.Ill.2000)(citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977)). Szabo is proceeding under Rule 23(b)(3), which provides in relevant part as follows:

(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3); *Frahm v. Equitable Life Assur. Soc. of United States*, 137 F.3d 955, 957 (7th Cir.1998). These two factors are commonly referred to as: "predominance" and "superiority".

Szabo bears the initial burden of advancing reasons why this action meets the requirements of Rule 23. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). In ruling on a motion for class certification the focus is simply on whether the prerequisites of Rule 23 have been met. The court does not conduct a hearing on the merits when deciding upon certification of a class. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Additionally, since the class determination is made at the pleading stage of the action, the substantive allegations in the complaint are accepted as true for purposes of the class motion. *In re Synthroid Marketing Litig.*, 188 F.R.D. 287, 290 (N.D.Ill.1999); *Jefferson v. Security Pacific Financial Svcs., Inc.*, 161 F.R.D. 63, 66 (N.D.Ill.1995). However, "ordinarily the determination should be predicated on more information than the pleadings will provide." *Simer v. Rios*, 661 F.2d 655, 689 (7th Cir.1981)(quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974)). Rule 23 is to be construed liberally. *Anschul v. Sitmar Cruises, Inc.*, 544 F.2d 1364, 1368 (7th Cir.1976).

Bridgeport takes issue with this court's reliance on established law which states that, at this stage of the litigation, the substantive allegations in the complaint are accepted as true. Bridgeport does not dispute that this proposition is the law in this circuit[1], but argues that the law is wrong because it misreads the underlying Supreme Court cases, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The pertinent discussion in *Eisen* is as follows:

We also agree with the Court of Appeals that petitioner must bear the cost of notice to the members of his class. The District Court reached the contrary conclusion and imposed 90% of the notice cost on respondents. This decision was predicated on the court's finding, made after a preliminary hearing on the merits of the case, that petitioner was 'more than likely' to prevail on his claims. Apparently, that court interpreted Rule 23 to authorize such a hearing as part of the determination whether a suit may be maintained as a class action. We disagree.

We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such '(a)s soon as practicable after the commencement of (the) ac-

tion. . . .' In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International,* 452 F.2d 424 (C.A.5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:

'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' *Id.,* at 427

Additionally, we might note that a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant.

417 U.S. at 177–78, 94 S.Ct. 2140

In *General Tel.,* the Supreme Court stated: We do not, of course, judge the propriety of a class certification by hindsight. The District Court's error in this case, and the error inherent in the across-the-board rule, is the failure to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a). As we noted in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.,* at 469, 98 S.Ct., at 2458 (quoting *Mercantile Nat. Bank v. Langdeau,* 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523). Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the

---

1. *See also* 5 James Wm. Moore *et al., Moore's Federal Practice* § 23.46[4] (3d ed. 1999)("On a motion for class certification a court may not decide the merits of the case, but must accept the substantive allegations contained in the complaint as true.")(citing *Eisen v. Carlisle & Jacque-*

*lin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598–99 (7th Cir.1993); *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 55 (N.D.Ill.1996)).

certification question. Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, "in inherently tentative." 437 U.S., at 469, n. 11, 98 S.Ct., at 2458 n. 11. This flexibility enhances the usefulness of the class-action device; actual, not presumed, conformance with Rule 23(a) remains, however, indispensable.

457 U.S. at 160, 102 S.Ct. 2364.

From these two cases Bridgeport has constructed a standard of analysis it doggedly insists this court is required to apply. According to Bridgeport, since it has contested the facts underlying Szabo's assertion that class certification is appropriate, the court cannot accept the facts as alleged in Szabo's complaint but must conduct an inquiry to determine whether Bridgeport's facts, rather than Szabo's facts, are true.

Clearly, Bridgeport's interpretation of Supreme Court law is a bit myopic. It is clear (as this court acknowledged in its order of January 12, 2001), that it is sometimes appropriate for a court to "probe behind the pleadings" when making a decision on certification. However, this is not to say that such a probing is required in every case in which Rule 23 certification is contested (which would be virtually every Rule 23 motion), or that such probing involves deciding contested issues of fact that go to the heart of the plaintiffs' claims [2]. In the present case, Szabo's extensive complaint contains excruciating detail, including specific quotations from internal communications among defendant's employees discussing the problems experienced with machines equipped with the DX–32 Control Unit. Additionally, the court had before it Szabo's deposition transcript, his interrogatory responses (which exceeded 60 pages in length), and a variety of Bridge-port's own documents. Therefore, unlike some cases where the issues are not plain from the pleadings, *see General Tel., supra,* the issues in the present case were fully presented to the court, along with a virtual plethora of facts.

Moreover, in many instances where Bridgeport claims that the court must accept its version of the facts as true, the facts were not relevant to the issue. For example, in connection with this court's discussion of whether common factual issues predominate, this court noted that Bridgeport's position was that Szabo's claim is one based on oral misrepresentations, which oral misrepresentations would be different for each potential Class member, arguably rendering class certification inappropriate. Order at 9. This court then went on to note that "[i]n any event, the law is clear that the presence of some oral misrepresentations does not preclude class treatment". Order at 10, citing to *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 188 (N.D.Ill.1992). Therefore, even if Bridgeport's facts had been accepted as true (that the claim was based on oral misrepresentations), under the applicable law class representation was not precluded.

The remainder of Bridgeport's arguments, including the arguments with respect to choice of law, are clearly rehash. This court carefully considered Bridgeport's arguments during its initial consideration of the motion for class certification [3]. Bridgeport has not cited to any new evidence or new law in this matter. Therefore, the court declines Bridgeport's offer to reconsider the order of January 12, 2001.

In light of the fact that this court has not changed its order of January 12, 2001, Szabo's motion to strike the affidavit of Mr. McNamara will be deemed moot.

---

**2.** The court fully realizes, however, that it is not barred from examining the issues involved in the litigation in order to determine whether to certify a class. *See Elliott v. ITT Corp.,* 150 F.R.D. 569, 572 (N.D.Ill.1992)(although court cannot consider arguments on merits, court should consider substantive elements of plaintiff's claims and proof necessary to those elements so as to envision form trial would take). In the present case, the issues were fully examined in the parties' numerous briefs and this court's thirty-one page order.

**3.** In fact, the court considered numerous briefs related to issues raised by the motion for class certification.

*Conclusion*

On the basis of the foregoing, Bridgeport's motion to reconsider is hereby DENIED. Further, Szabo's motion to strike is hereby DEEMED MOOT.